USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-2450 No. 93-1008 UNITED STATES, Appellee, v. DOMENIC LOMBARDI, Defendant, Appellant. ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Raymond J. Pettine, Senior U.S. District Judge] __________________________ ____________________ Before Boudin, Circuit Judge, _____________ Coffin, Senior Circuit Judge, ____________________ and Oakes,* Circuit Judge. _____________ ____________________ Robert B. Mann with whom Mann & Mitchell was on brief for ________________ ________________ appellant. Margaret E. Curran, Assistant United States Attorney, with whom ___________________ Lincoln C. Almond, United States Attorney, and James H. Leavey, ___________________ ________________ Assistant United States Attorney, were on brief for appellee. ____________________ September 24, 1993 ____________________ ___________________________ *Of the Second Circuit, sitting by designation. BOUDIN, Circuit Judge. Domenic Lombardi pled guilty on _____________ August 12, 1992, to six counts of a nine-count superseding indictment, the remaining counts being dismissed at the government's behest. The nature and interrelationship of the charges is critical to an understanding of the case. Three of the counts to which Lombardi pled guilty charged conspiracy to commit mail fraud (count I) and two acts of mail fraud (counts III and VI). 18 U.S.C. 371, 1341. All three counts related, at least in part, to Lombardi's conduct in fraudulently securing insurance proceeds by having another man set fire to Lombardi's property. One of the properties was a building owned by Lombardi; the other was a mobile home that Lombardi was renting to a tenant. Two further counts (VIII and IX) were for depositing in a bank the insurance proceeds received in the respective episodes. 18 U.S.C. 1957. That statute makes it an offense to engage knowingly in a monetary transaction involving criminally derived property of a value greater than $10,000 where the property resulted from one of a number of specified offenses, including mail fraud.1 The remaining count (VII) was for using a fire to commit mail fraud, 18 ____________________ 1As shorthand, we refer to the offense as "money laundering." In fact, there is a separate federal offense of "laundering of monetary instruments" under 18 U.S.C. 1956 with more demanding requirements and greater penalties. -2- 2 U.S.C. 844(h), specifically, the setting of the fires involved in the mail fraud counts. On December 3, 1992, the district court sentenced Lombardi to 63 months, comprising concurrent and consecutive sentences of varying amounts, on the conspiracy, mail fraud, and money laundering counts; to an additional, consecutive 60-month sentence, which is mandatory, on the using a fire count; and to a three-year term of supervised release. The district court also imposed a $60,000 fine and ordered that Lombardi pay restitution in the amount of $190,880.08, representing losses to insurers.2 On this appeal, Lombardi has raised one seemingly novel issue under the Sentencing Guidelines, and several other objections more readily answered. The novel issue concerns the grouping rules and presents an issue of law on which our review is plenary. United States v. Phillips, 952 F.2d 591, _____________ ________ 594 (1st Cir. 1991), cert. denied, 113 S. Ct. 113 (1992). In ____________ this effort we are aided by the careful sentencing memorandum of the district court explaining why it rejected Lombardi's position on grouping. We first describe how the district court calculated Lombardi's sentence. ____________________ 2The November 1992 version of the Sentencing Guidelines was in effect at the time of the sentence, and our citations in this opinion are to that edition. The district court considered post-sentence memoranda pursuant to Fed. R. Crim. P. 35. On December 10, 1992, the district court reaffirmed its sentence, vacating the original sentence and imposing it again. -3- 3 The court first separated the conspiracy/mail fraud counts into one group of offenses and the money laundering counts into another. U.S.S.G. 3D1.2 (grouping of closely related counts). The using a fire count was excluded from the grouping rules because the statute imposes a mandatory consecutive sentence. See U.S.S.G. 3D1.1(b). Then, the court calculated the base offense level for each group, that being in each of the groups here involved the level for the highest-level count in the group. U.S.S.G. 3D1.3(a). Based in part on the dollar amounts involved, the base level for the conspiracy/mail fraud group was 16, U.S.S.G. 2F1.1, and for money laundering the base offense level was 17. U.S.S.G. 2S1.2 Then--and this is the point critical to Lombardi's argument--the district court increased the base offense level for the money laundering group by 2 levels, to 19, because the guideline for money laundering provides as a specific offense characteristic that a two-level increase is required "[i]f the defendant knew that the funds were the proceeds of any . . . specified unlawful activity" other than narcotics. U.S.S.G. 2S1.2(b)(B). "Specified unlawful activity" refers to a list of crimes, including mail fraud. See id. 2S1.2, ___ ___ application note 1; 18 U.S.C. 1956(c)(7), 1961(1). Since Lombardi committed the mail frauds, it is unquestioned that -4- 4 he knew that the funds laundered were obtained through mail fraud.3 Under the grouping rules, the offense level where one group is level 19 and the other level 16 is derived by taking the higher level and increasing it by 2 levels. U.S.S.G. 3D1.4 (prescribing two-level increase where the offense levels for the two groups are within four levels of one another). This combined offense level of 21 was then reduced by two levels for acceptance of responsibility. U.S.S.G. 3E1.1(a). The resulting final offense level of 19 was used, in conjunction with Lombardi's substantial criminal history (category V), to specify the range--57 to 71 months--on which his 63 month sentence was based. See U.S.S.G. sentencing ___ table. As earlier noted, the sentence for the using a fire count was separately determined, and it is not in issue. Lombardi's central claim on this appeal is that the money laundering counts should not have been grouped separately but should have been included in a single group with the conspiracy/mail fraud counts. If so, the money laundering counts would have represented the highest level count in this single group, producing an offense level of 19 ____________________ 3The money laundering offense under section 1957 requires that the launderer know that the proceeds are derived from criminal activity but it explicitly does not require that the launderer know that the activity is one of those "specified unlawful activit[ies]" named in the statutes. 18 U.S.C. 1957(c). -5- 5 for the single group. After reducing this figure to level 17 for acceptance of responsibility, the sentencing range fixed by the sentencing table would have been 46 to 57 months, well below the 63 months actually imposed. The rules for grouping of closely related counts, set forth in U.S.S.G. 3D1.2, largely eliminate cumulative punishment for multiple counts in the same group (although one count may comprise a specific offense characteristic or adjustment for another count in the group). The introductory commentary says that a single group combines "offenses [that] are closely interrelated," U.S.S.G., part D, intro. commentary, and the guideline for grouping closely related counts says that it covers "counts involving substantially the same harm," U.S.S.G. 3D1.2. But this is background: what controls are the four subsections of the guideline that say precisely when grouping shall occur. Subsection (a) of section 3D1.2 applies when the counts involve the same victim and the same act or transaction, and the latter requirement is clearly not met here since the fraud and money laundering are distinct acts. Subsection (b) applies when there is the same victim and multiple acts or transactions that have a common objective or comprise a common plan. The guidelines are clear that, for purposes of these subsections, the victim of fraud is the insurance company and the victim of money laundering is society. See ___ -6- 6 U.S.S.G. 3D1.2, application note 2. To the extent that Lombardi is relying upon subsection (b), the argument is foreclosed. Lombardi's best, and main, argument hinges upon U.S.S.G. 3D1.2(c) which provides that counts shall be grouped together [w]hen one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts. Because knowledge that the money laundered funds were derived from mail fraud was a specific offense characteristic in the guideline applicable to the money laundering counts, Lombardi contends that section 3D1.2(c) governs in this case and requires that all five counts--conspiracy/mail fraud and money laundering--be grouped together. Neither Lombardi nor the government has found any decision that directly addresses this issue. In our view, the better reading of section 3D1.2(c) is that it does not apply to this case. The "conduct" embodied in the mail fraud counts is the various acts constituting the frauds, coupled with the requisite intent to deceive; the "specific offense characteristic," in U.S.S.G. 2S1.2(b)(1)(B), is knowledge that the funds being laundered are the proceeds of a mail fraud. It happens that Lombardi's knowledge of the funds' source derives from the fact that he committed the frauds, -7- 7 but that does not make the fraudulent acts the same thing as knowledge of them. Lombardi's reading would also create a disturbing anomaly in the guideline's application. One who commits a fraud and launders the money (thereby knowing of its source) ___ is normally more culpable than one who merely launders the money knowing of its source. Yet if Lombardi's interpretation were adopted, a defendant would get exactly the same total offense level whether the defendant committed the mail fraud or merely knew that someone else had committed it: in either case, all five counts would be a single group, and the money laundering count would generate a level 19 (17 as the base offense level and a 2 level increase for knowledge of source). The anomaly is not conclusive but it reinforces our inclination to read the guidelines literally. If there is any discomfort in the interpretation, it may come less from the illusion of double counting than from other sources. Some might think it odd to punish a defrauder separately for depositing his ill-gotten gains in a bank rather than spending the money outright. But that is the consequence of a deliberate policy choice by Congress, and one that is much easier to understand when one thinks of the relationship between bank deposits, money laundering and organized crime. As for the choice to increase the sentence because the defendant knew the "specific" criminal source of -8- 8 the funds, one may quarrel with the Sentencing Commission's policy but the intent is clear. The logic of the guidelines is easier to understand if one substitutes a more potent (but hypothetical) "specific offense characteristic." Thus, suppose a defendant burgled a house, found it inhabited, and returned a week later to burn it down (knowing from the burglary that it was inhabited). No one would cavil at treating knowledge of inhabitation as a specific offense characteristic to enhance the arson while at the same time punishing the defendant for burglary. In Lombardi's case, it is harder to understand why knowledge that the laundered money came from mail fraud, instead of merely from some unspecified criminal source, should enhance the sentence for money laundering. But the principle of imposing an enhancement, based on knowledge of a crime the defendant himself committed, is the same. Accordingly, we conclude that Lombardi's interpretation of the guidelines fails and that both his mail fraud and his knowledge that the source of the laundered funds was mail fraud may play separate roles in enhancing his sentence. The apparent severity of the result should not be overstated: the probable effect is a sentence about six months longer than Lombardi would otherwise have received. It should also not be forgotten that the same guideline grouping rules manage to combine a level 19 offense with a level 16 offense to produce -9- 9 a combined offense level of only 21 (instead of 35) before the final adjustment, a charity far more significant than the two point increase that is at issue here. Lombardi's remaining arguments warrant less discussion. He asserts that his age (58 at the time of sentencing), physical ailments, and mental-health problems required a downward departure. Admitting that discretionary refusals to depart downward are not appealable, United States v. Lauzon, _____________ ______ 938 F.2d 326, 330 (1st Cir.), cert. denied, 112 S. Ct. 450 ____________ (1991), Lombardi contends that the district judge must have believed that it lacked authority to depart downward. Suffice it to say that there is no evidence that the district court doubted its authority to depart. Departures on the grounds asserted are comparatively rare, e.g., U.S.S.G. ____ 5H1.1, 5H1.4, and in the ordinary case no explanation for declining to do so is required. Error is also premised on the district court's failure to give Lombardi a third point for acceptance of responsibility, as permitted by a newly adopted provision of the guidelines, where the defendant either: 1. timely provid[es] complete information to the government concerning his own involvement in the offense; or 2. timely notify[ies] authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently. -10- 10 U.S.S.G. 3E1.1(b). Although the district court made no explicit findings in denying a third point, the court's sentence followed shortly after the prosecutor argued against the extra point, and we may fairly assume that the prosecutor's arguments were accepted. As to the first branch of section 3E1.1(b), the prosecutor argued that Lombardi did not provide complete information as to his involvement because he had withheld specific information that the prosecutor described. Neither at the hearing nor in his brief on appeal does Lombardi answer this charge. The second branch requires "timely" notification of the guilty plea to permit the government to avoid the expense of preparing for trial. Since Lombardi did not plead guilty until after the jury had been empaneled, well after the government had prepared for trial, he plainly did not meet the requirement. Lombardi's next argument is that the district court erred in imposing a $60,000 fine as part of the sentence. Although he asserts that the court "did not consider" his financial resources, the court did in fact take note of information bearing on these resources, including Lombardi's transfer to his son of a 13.3 percent interest in the family business and an $85,853 receivable. According to the government, Lombardi had obtained about $190,000 from insurance fraud (reflected in the restitution order) during -11- 11 the prior three years. The district court also noted that the probation officer had encountered difficulty in securing complete financial information from Lombardi. Under the guidelines, the presumption is that a fine will be imposed, and the burden is upon the defendant to show that a fine is not warranted. United States v. Savoie, 985 _____________ ______ F.2d 612 (1st Cir. 1993). On this record, we think that the district court could fairly conclude that Lombardi had not long before been in possession of sums ample to pay the $60,000 fine and that their absence had not been adequately explained. A defendant has little incentive to help in an inventory of his assets, and a busy federal judge is not required to conduct an audit before imposing a fine.4 Lastly, Lombardi argues that the court should not have imposed a restitution order, under the Victim and Witness Protection Act, 18 U.S.C. 3663-64, requiring Lombardi to repay the $190,000 obtained from insurers. Apart from the lack of explicit findings of financial condition, which ____________________ 4Citing United States v. Spirolpoulos, 976 F.2d 155 (3d _____________ ____________ Cir. 1992), Lombardi also says that the fine was unlawful because its purpose was to pay the cost of his incarceration and supervision. Whether or not this court would follow the Third Circuit need not be decided here. Compare United _______ ______ States v. Turner, 998 F.2d 534 (7th Cir. 1993) (disagreeing ______ ______ with the Third Circuit). In Spirolpoulos, the sentencing ____________ court imposed a flat fine and then a per diam amount for incarceration costs. Here, the court imposed only the flat fine, the judgment labels it a "fine," and it is irrelevant that the judgment form has a boilerplate statement that "[t]he fine includes any costs of incarceration and/or supervision." -12- 12 Savoie holds are not required, 985 F.2d at 620, see also ______ ________ United States v. Ahmad, 1993 U.S. App. LEXIS 21587 (7th Cir. ______________ _____ 1993), Lombardi's brief argues that such a liability is unrealistic when there is little evidence of actual assets or future earning power. We agree that on this record there might be no basis for an affirmative finding that Lombardi does or necessarily will have $190,000 available to pay such restitution. But we fail to see why such a record basis should be required. Lombardi does not deny that the money was secured from the insurers by fraud, and the whereabouts of the entire $190,000 is at least uncertain, as are his future prospects of income. While the judgment requiring restitution may prove fruitless, it may also be of some use if Lombardi ever secures new assets or the insurance companies wish to prove that assets held nominally by family members are really Lombardi's. In all events, the statute merely requires the court to "consider" financial condition, among other factors, 18 U.S.C. 3664(a); there is no requirement that the defendant be found able to pay now. See Ahmad, 1993 U.S. ___ _____ App. LEXIS 21587, at *4-5. In framing this restitution order, the district court did not abuse its considerable discretion. Affirmed. ________ -13- 13