**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 94-10933

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

VICTOR DEVANE DOMINO,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Texas
( August 22, 1995)

Before SMITH, WIENER, and DeMOSS, Circuit Judges.

WIENER, Circuit Judge.

Defendant-Appellant Victor Devane Domino appeals a final judgment sentencing him under the 1993 version of the Sentencing Guidelines to a total of ninety-six months in prison and a one-year term of supervised release for an offense concluded in 1990. As we determine that this sentence violates the ex post facto clause of the United States Constitution, we vacate and remand to the district court for resentencing pursuant to the 1989 version of the Sentencing Guidelines.

I

FACTS AND PROCEEDINGS

Domino was indicted in May 1990, in a three-count indictment

charging (1) possession of phenylacetic acid with intent to manufacture a controlled substance in violation of 21 U.S.C. § 841(d)(1) (Count One); and (2) unlawful use of a telephone to facilitate the possession of a listed chemical with intent to manufacture a controlled substance in violation of 21 U.S.C. § 843(b) (Counts Two and Three). In accordance with a plea agreement, Count One was dismissed after Domino pleaded guilty to the communication offense charged in Counts Two and Three. The factual resume accompanying Domino's guilty plea stated the following:

> In the Dallas Division of the Northern District of Texas, on March 16, 1990, at approximately 9:45 a.m. and on March 16, 1990, at approximately 3:15 p.m. the defendant used a communication facility, namely a telephone to call an undercover agent with the Drug Enforcement Administration (DEA) about purchasing phenylacetic acid, a listed chemical, for the purpose of manufacturing a controlled substance.

An addendum to the factual resume stated in relevant part:

> The phenylacetic acid referred to in Counts 2 and 3 of the Indictment and the Factual Resume, a one-hundred ten pound drum of phenylacetic acid, was to be used to manufacture amphetamine, a controlled substance.

Domino's sentencing hearing was scheduled for October 4, 1990, but Domino did not appear for sentencing on either that day or the next--the date to which his sentencing had been postponed. The hearing was then postponed indefinitely and a warrant was issued for Domino's arrest. Domino was eventually arrested and sentenced in 1994.

A presentence investigation report (PSR) had been prepared in 1990 in anticipation of Domino's sentencing hearing scheduled for that year (the 1990 PSR). The 1990 PSR was calculated pursuant to the 1989 Sentencing Guidelines and established a base offense level

of thirty-two for Domino's sentence.  The probation officer who prepared the 1990 PSR noted in that report that the applicable guideline for a violation of 21 U.S.C. § 843(b)--Domino's offense of conviction--was U.S.S.G. § 2D1.6, which listed a base offense level of twelve.[1]  The officer determined, however, that Domino's guilty plea contained a stipulation that established the more serious offense of possession under 21 U.S.C. § 841(d)(1).  She therefore calculated a base offense level of thirty-two--the base offense level for the more serious offense--pursuant to U.S.S.G. § 1B1.2.[2]

Domino objected to the 1990 PSR, arguing that the base offense level contained in that report was calculated on the basis of the erroneous conclusion that he had stipulated to the more serious offense of possession under 21 U.S.C. § 841(d)(1).  Domino insisted that he did not stipulate that he actually possessed the phenylacetic acid in issue, only that he used the telephone to facilitate possession.

Prior to Domino's sentencing hearing in 1994, the 1990 PSR was updated to incorporate the 1993 version of the Sentencing

---

[1]U.S.S.G. § 2D1.6 (1989).

[2]See U.S.S.G. § 1B1.2 (1989) (directing court to determine the offense guideline section most applicable to the offense of conviction.  "*Provided*, however, in the case of conviction by a plea of guilty or nolo contendere containing a stipulation that specifically establishes a more serious offense than the offense of conviction, determine the offense guideline section. . . most applicable to the stipulated offense."); see also U.S.S.G. § 2D1.1 (1989) (applicable guideline for more serious offense of unlawful manufacturing, importing, exporting, or trafficking, including possession with intent to commit these offenses).

3

Guidelines (the 1994 PSR).[3] In contrast to the 1989 version of the guidelines, Section 2D1.6 of the 1993 Sentencing Guidelines directed the court to calculate the base offense level for the offense underlying the communication offense, rather than assign a base offense level of twelve. Concluding that the offense level computations were more favorable to Domino under the 1993 Guidelines than the 1989 Guidelines,[4] the probation officer calculated a base offense level of twenty-eight (the base offense level for the underlying offense of possession).[5]

Domino raised the same objection to the 1994 PSR that he had to the 1990 PSR, arguing essentially that, as he never stipulated to the more serious offense of possession in 1990, the correct base offense level for the 1990 PSR was twelve, which produces a more favorable sentence than a sentence under the 1993 Sentencing Guidelines. The district court rejected Domino's argument and determined that the total offense level for Domino's conviction was thirty. The court sentenced Domino to forty-eight months on each count of Counts Two and Three to run consecutively for a maximum of

---

[3]See U.S.S.G. § 1B1.11 (a) (1993) (directing court to apply sentencing guidelines in effect on date that defendant is sentenced).

[4]See U.S.S.G. § 1B.11 (b) (1993):
(b) If the court determines that use of the Guidelines Manual in effect on the date that the defendant is sentenced would violate the ex post facto clause of the United States Constitution, the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed.

[5]See U.S.S.G. § 2D1.11(a)(1) (1993) (base offense level for unlawful possession of over 20 KG of phenylacetic acid).

4

ninety-six months, with a term of supervised release of one year on each count, to run concurrently.  Domino filed a timely notice of appeal.

## II

## ANALYSIS

A.  STANDARD OF REVIEW

We review challenges to the district court's application and legal interpretation of the Sentencing Guidelines *de novo*.[6]  We review for clear error a district court's findings of fact as they pertain to a defendant's sentence, but review *de novo* a district court's determination of the meaning and effect of any factual stipulations on a sentence.[7]

B.  STIPULATION?  MISCALCULATION?  EX POST FACTO VIOLATION?

Domino asserts that his sentence, which was calculated pursuant to the 1993 Sentencing Guidelines, violates the ex post facto clause of the United States Constitution.  He insists that the 1989 Sentencing Guidelines--the guidelines in effect on the date of his offense of conviction--if calculated correctly, would have resulted in a sentence more favorable to him, and therefore should have been used for sentencing rather than the less favorable 1993 Sentencing Guidelines.  Specifically, Domino contends that, had the probation officer calculated correctly in the 1990 PSR a

---

[6]United States v. Radziercz, 7 F.3d 1193, 1195 (5th Cir. 1993), cert.denied, 114 S.Ct. 1575 (1994); United States v. Leed, 981 F.2d 202, 207 (5th Cir.) (citing United States v. Shell, 972 F.2d 548 (5th Cir. 1992)), cert. denied, 113 S.Ct. 2971 (1993).

[7]Braxton v. United States, 500 U.S. 344, 350 (1991).

base offense level of twelve as directed by U.S.S.G. § 2D1.6--the applicable guideline for a communication offense under 21 U.S.C. § 843(b)--rather than applying erroneously--pursuant to U.S.S.G. § 1B1.2(a)--the base offense level for the allegedly stipulated, more serious offense of possession, his sentence under the 1989 Sentencing Guidelines would have been more favorable than his sentence under the 1993 version of the guidelines.

Section 1B1.11 of the Sentencing Guidelines instructs a sentencing court to use the guidelines manual in effect on the date that a defendant is sentenced, unless the court determines that "use of the Guidelines Manual in effect on the date that the defendant is sentenced would violate the ex post facto clause of the United States Constitution," in which case the court should use the version of the guidelines in effect on the date that the offense of conviction was committed.[8]  "A criminal law is ex post facto if it is retrospective and disadvantages the offender by altering substantial personal rights."[9]  A sentence that is increased pursuant to an amendment to the guidelines effective after the offense was committed violates the ex post facto clause.[10] If, as Domino asserts, the correct base offense level for his sentence under the 1989 Sentencing Guidelines is twelve, then the district court's application of the 1993 Sentencing Guidelines to

---

[8]U.S.S.G. § 1B1.11 (1993).

[9]United States v. Gonzales, 988 F.2d 16, 18 (5th Cir.) (citing Miller v. Florida, 482 U.S. 423, 430 (1987)), cert. denied, 114 S.Ct. 170 (1993).

[10]United States v. Suarez, 911 F.2d 1016, 1022 (5th Cir. 1990).

his sentence imposed in 1994, with its base offense level of twenty-eight, violates the _ex post facto_ clause.

The Sentencing Guidelines direct a sentencing court to calculate the appropriate base offense level for a sentence by determining which section of the guidelines is most applicable to the offense of conviction.[11]  U.S.S.G. § 1B1.2(a) instructs, however, that when a defendant is convicted on the basis of a guilty plea containing a stipulation that specifically establishes a more serious offense than the offense of conviction, the sentencing court must determine and apply the guideline most applicable to the more serious offense.[12]

Domino asserts that the probation officer who prepared his 1990 PSR erred in applying U.S.S.G. § 1B1.2(a) in that report after concluding--incorrectly--that Domino's guilty plea contained a stipulation that established the more serious offense of possession under 21 U.S.C. § 841(d)(1).  Domino argues that the facts contained in the factual resume and amendment are the only factual stipulations that he made, and insists that those facts stipulate that he used a telephone to _facilitate_ the possession of

---

[11]U.S.S.G. § 1B1.2(a) (1993).

[12]_Id._  The 1989 Sentencing Guidelines refer to a conviction by "a plea of guilty or _nolo contendere_," whereas the 1993 Guidelines refer to a "plea agreement (written or made orally on the record)." Similarly, the 1989 application notes interpret this provision as applying when "a stipulation as part of a _plea of guilty or nolo contendere_ specifically establishes. . .," whereas the 1993 version refers to "a stipulation that is _set forth in a written plea agreement or made between the parties on the record during a plea proceeding_ specifically establishes . . . ."  _See_ U.S.S.G. § 1B1.2, commentary note 1 (1989) and (1993).

phenylacetic acid, but do not specifically establish that he actually possessed phenylacetic acid.[13]

The government does not attempt to argue that the plea agreement or factual resume specifically establish facts showing possession. Rather, after noting that Domino pleaded guilty to two counts of a communication offense under 21 U.S.C. § 843(b), the government argues that an essential element of that offense is that the underlying drug offense was in fact committed. The foundation of the government's argument, therefore, is that, "where guilt of the offense of conviction depends on guilt of the underlying offense, a U.S.S.G. § 1B1.2(a) stipulation should be held to exist."

The government offers three bases on which it supports its assertion that the district court was justified in ascertaining that Domino's stipulated conduct constituted the more serious offense of possession with intent to manufacture. First, the government asserts that the language of the indictment states that Domino intentionally and knowingly used the telephone to facilitate the possession of the phenylacetic acid.[14] Second, the government contends that the only reason that the amendment to the factual resume was executed was to establish the quantity of phenylacetic

_____

[13]Domino does not dispute that § 1B1.2 is applicable in circumstances when a more serious offense is stipulated under 21 U.S.C. § 841(d)(1). He merely asserts that in his case his guilty plea did not contain a stipulation to the more serious offense.

[14]Counts Two and Three charge that Domino "intentionally and knowingly did unlawfully use a communication facility, that is, a telephone, in facilitating the possession of phenylacetic acid. . . in that [Domino] used said telephone to discuss with a person known to the grand jury, the sale and possession of phenylacetic acid."

8

acid involved in order to determine the applicable guideline for sentencing under the more serious offense.[15] Third, the Government insists that Domino affirmed that he understood the nature of the charges to which he pleaded guilty and that he understood that his plea relieved the government of its burden of proving the crimes against him.

Contrary to the government's contention, a conviction for a communication offense under 21 U.S.C. § 843(b) does not necessarily import a more serious offense of possession under 21 U.S.C. § 841(d)(1). In United States v. Martinez,[16] we observed that a conviction under 21 U.S.C. § 843(b) requires a different element of proof than a conviction under 21 U.S.C. § 841(d)(1).[17] A conviction under § 843(b) requires proof that a defendant knowingly and intentionally used a communications facility to facilitate the commission of a drug offense,[18] whereas a conviction under § 841(d) requires proof that a defendant knowingly and intentionally

---

[15]The government suggests that, in light of the fact that in 1989 the base offense level for a § 843(b) communication violation was 12, without any adjustment for quantity, the only reason for stipulating the quantity of the listed chemical was for sentencing under the stipulation provision of § 1B1.2. The government contends that the fact that the amendment was executed shows that the plea agreement did contemplate a stipulation to the more serious offense and that Domino knew that he was stipulating to the more serious offense when he executed the amendment.

[16]950 F.2d 222 (5th Cir. 1991), cert. denied, 504 U.S. 926 (1992).

[17]Id. at 224 (reviewing whether consecutive sentences under 21 U.S.C. § 841(d) and 21 U.S.C. § 843(b) violate rule against double jeopardy).

[18]21 U.S.C. § 843(b) (1984); Martinez, 950 F.2d at 224.

possessed a listed chemical with the intent to manufacture a controlled substance.[19] "Thus not every violation of § 843(b) constitutes a violation of § 841(d), and vice versa."[20] As a conviction under 21 U.S.C. § 843(b) does not "depend" on a conviction under 21 U.S.C. § 841(d), it does not follow that Domino's guilty plea to a violation of § 843(b) necessarily established a violation of the more serious offense under § 841(d)(1). Thus the question on appeal is whether Domino's guilty plea contained a stipulation that specifically established the more serious offense under 841(d)(1).

Recently, in United States v. Garcia,[21] we reiterated our standard for determining whether, as per U.S.S.G. § 1B1.2, a stipulation specifically establishes a more serious offense than the offense of conviction.

> [I]n deciding whether a stipulation specifically establishes a more serious offense than the offense of conviction, the trial court must follow the directive contained in Fed.R.Crim.P. 11(f) and satisfy itself that a 'factual basis for each essential element of the crime [has been] shown. The court must examine 'the relation between the law and the acts the defendant admits' to ascertain whether the stipulated conduct constitutes a criminal offense.[22]

In Garcia, the two appellants and four codefendants were

---

[19]21 U.S.C. § 841(d)(1) (1995); Martinez, 950 F.2d at 224.

[20]Martinez, 950 F.2d at 224 (offering as an example, fact that defendant could have been convicted under § 843(b) had he used a telephone to facilitate other defendants' possession of chemical without ever possessing chemical himself).

[21]931 F.2d 1017 (5th Cir. 1991).

[22]Id. at 1019 (quoting United States v. Martin, 893 F.2d 73, 75 (5th Cir. 1990) (citations omitted)).

charged in a two-count indictment with possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) and conspiracy to do the same in violation of 21 U.S.C. § 846. The appellants each waived the indictment and pleaded guilty to a superseding charge of use of a telephone in committing a felony in violation of 21 U.S.C. § 843(b). The probation office prepared a PSR, recommending sentences based on the base offense level for the more serious offense of possession. The appellants objected, arguing that their base offense level should have been calculated at twelve by reference to U.S.S.G. § 2D1.6. The district court overruled the appellants' objections and imposed the recommended maximum sentence. In vacating and remanding that sentence, we concluded in relevant part that (1) the precise nature of the appellants' involvement in the offense could not be determined from the stipulated facts; (2) the sentencing court's reliance on facts contained in the PSR was inappropriate because the factual basis for each element of the greater offense must appear in the <u>stipulated</u> facts as made <u>on the record</u>; and (3) the appellants' failure to object to the facts set forth in the PSR did not "constitute a 'stipulation' to those facts, much less a stipulation 'on the record.'"[23]

In light of <u>Garcia</u>, for us to decide whether Domino's plea agreement contains a stipulation specifically establishing the more serious offense of possession under 21 U.S.C. § 841(d)(1), we must determine whether the stipulated facts as made on the record--the

---

[23]<u>Id.</u> at 1019-20.

11

plea agreement, factual resume, and amendment--establish a factual basis for each essential element of that offense.[24]  Thus, the agreement, resume, and amendment must <u>specifically establish</u> that Domino (1) knowingly or intentionally (2) possessed a listed chemical (3) with intent to manufacture a controlled substance.[25]

Domino stipulated in the factual resume that he used a telephone to call a DEA agent about purchasing phenylacetic acid for the purpose of manufacturing a controlled substance.  There is nothing in this stipulation that specifically establishes that Domino actually (or even constructively) obtained and possessed the phenylacetic acid.[26]  Similarly, Domino stipulated in the amendment to the factual resume only that the phenylacetic acid referred to in Counts Two and Three was in the amount of a 110 pound drum.  Again, nothing in this stipulation specifically establishes the essential elements of the more serious offense of possession with intent to manufacture.  We conclude, therefore, that the stipulated facts as made on the record do not establish the more serious offense of possession in violation of 21 U.S.C. § 841(d)(1).

III

---

[24]<u>Id.</u>; <u>Martin</u>, 893 F.2d at 75. <u>See</u> <u>also</u> <u>Braxton v. United States</u>, 500 U.S. 344, 349 (1991) (observing that sentence based on more serious offense cannot stand unless defendant's agreement to facts constitute a stipulation that specifically establishes the elements of the offense).

[25]<u>See</u> 21 U.S.C. § 841(d)(1) (1995).

[26]<u>See</u> e.g., <u>United States v. Sanchez</u>, 961 F.2d 1169, 1175 (5th Cir.) (defining "possession"--either actual or constructive--as defendant's ownership, dominion, and control over item) (citing <u>United States v. Richardson</u>, 848 F.2d 509, 512 (5th Cir. 1988)), <u>cert. denied</u>, 113 S.Ct. 330 (1992).

CONCLUSION

In the absence of any stipulated facts that specifically establish that Domino <u>possessed</u> phenylacetic acid with intent to manufacture a controlled substance in violation of 21 U.S.C. § 841(d)(1), it follows that the 1990 PSR, which contained a base offense level calculated according to that offense was incorrect. Consequently, the district court's finding that Domino's sentence under the 1993 Sentencing Guidelines, which produced a base offense level of twenty-eight, was more favorable to Domino than his sentence under the 1989 version of the guidelines, which if calculated correctly would have assessed a base offense level of twelve, was erroneous. Thus, as Domino's sentence under the 1993 Sentencing Guidelines violates the <u>ex post facto</u> clause, it must be vacated and remanded to the district court for resentencing under the 1989 version of the Sentencing Guidelines.

VACATED AND REMANDED.