UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 96-10707
_____


UNITED STATES of AMERICA,

                              Plaintiff - Appellee,

                versus

JERROLD WAYNE HALTOM,

                              Defendant - Appellant.


_____

Appeal from the United States District Court for the
                Northern District of Texas
_____
                May 13, 1997

Before DUHÉ, BENAVIDES, and STEWART, Circuit Judges.

BENAVIDES, Circuit Judge:

     The appellant, Jerrold Wayne Haltom, pleaded guilty in district court to one count of mail fraud and four counts of income tax evasion.  He was sentenced to concurrent prison terms of 26 months on each count.  Haltom appeals his sentence on two grounds. He contends that the district court misapplied the United States Sentencing Guidelines by refusing to group his mail fraud and tax evasion offenses together as "closely related" counts.  He also claims that he was sentenced in violation of his rights under the *ex post facto* clause of the Constitution.

     Haltom has more to gain, in terms of a definite and

substantial reduction in his prison term, from his grouping argument than from his *ex post facto* argument. Because we find the grouping argument persuasive, we need not address the merits of his constitutional claim.[1]

## I.

Haltom was an account executive with Oliver Taylor Company West, Inc., a food brokerage firm in Lubbock, Texas. He represented the interests of food manufacturers, including Heinz and Del Monte, in their dealings with wholesalers and retail grocers in West Texas and New Mexico. Each manufacturer routinely provided promotional funds to wholesalers and retailers that agreed to promote its products. As the man in the middle, Haltom billed the manufacturers for the grocers' promotional expenses and distributed the promotional funds.

Haltom exploited his position by perpetuating a false invoice scheme against his clients, the manufacturers. In simple terms, he claimed a greater amount in promotional funds than was owed the wholesalers and retailers, and he pocketed the difference. Unsurprisingly, he failed to report this illicit income on his federal income tax returns. Haltom stipulated that he misappropriated $766,618 from the food manufacturers and cheated the government of $100,838 in taxes for 1989, 1990, 1991, and 1992.

On February 16, 1996, Haltom was charged by information with

---

[1]Haltom would receive no incremental benefit from prevailing on both the *ex post facto* claim and the grouping argument.

one count of mail fraud and four counts of tax evasion in violation of 18 U.S.C. § 1341 and 26 U.S.C. § 7201, respectively.  He pleaded guilty, and was sentenced in district court on June 7, 1996.

## II.

We review *de novo* the district court's application and interpretation of the United States Sentencing Guidelines.  18 U.S.C. § 3742(e); *United States v. Domino*, 62 F.3d 716, 719 (5th Cir. 1995) (footnote and internal citations omitted).

Calculations under the guidelines begin with the determination of the appropriate base offense level for each count of conviction. The base offense level generally reflects the seriousness of the offense, as determined by the drafters of the guidelines.  In order to tailor the punishment to the crime in a given case, the guidelines provide for adjustments to the offense level based on various "specific offense characteristics."  For example, a sentence may be enhanced because of the amount of money or volume of contraband involved, the youth or old age of the victim, or the defendant's use of physical force or a firearm.  *See generally* UNITED STATES SENTENCING COMMISSION, GUIDELINES MANUAL, Ch. 2 (Offense Conduct), Introductory Commentary; *see also id.*, Ch. 1, Pt. A, subpart 4(a) (Real Offense vs. Charge Offense Sentencing) (1995).

In this case the district court was required to determine the base offense level for each of Haltom's offenses, adjust for any specific offense characteristics, and then calculate a combined offense level pursuant to the grouping rules governing multiple

counts of conviction. *See* GUIDELINES MANUAL, Ch. 3, Pt. D.

The district court calculated that the adjusted offense level for Haltom's mail fraud conviction was 20. The court began this calculation by assigning Haltom a base offense level of 6 pursuant to the appropriate fraud guideline, U.S.S.G. § 2F1.1(a). The court then increased the offense level by 10 because the fraud resulted in a loss of more than $500,000; by 2 because it involved the abuse of a position of private trust; and again by 2 because it required more than minimal planning. *See* U.S.S.G. §§ 2F1.1(b)(1)(K), 3B1.3, 2F1.1(b)(2).

The district court assigned Haltom an adjusted offense level of 16 for tax evasion. The district court treated the four tax evasion counts as a single offense, as required by the grouping rules. *See* U.S.S.G. § 3D1.2(d). The base offense level, 14, was determined in light of the aggregate tax loss to the government, $100,838. *See* U.S.S.G. §§ 2T1.1(a)(1), 2T4.1 (Tax Table).[2] The offense level for tax evasion was increased to 16 because the

---

[2]The district court's reliance on the tax table in the 1995 edition of the Guidelines Manual gave rise to appellant's *ex post facto* claim. The tax table was amended November 1, 1993, increasing by 2 the offense level for a tax loss of $70,000 to $120,000. *See* U.S.S.G., App. C, amend. 491. This amendment took effect after Haltom filed the last of his four false tax returns but while his mail fraud scheme was ongoing. Guidelines section 1B1.11(b)(3) purports to authorize the retroactive application of an amendment to the guidelines, so long as the defendant is being sentenced for at least one crime perpetrated after the amendment. Haltom argues, however, that the retroactive application of the amended tax table in this case violated the *ex post facto* clause. *See United States v. Domino*, 62 F.3d 716, 720 (5th Cir. 1995) ("A sentence that is increased pursuant to an amendment to the guidelines effective after the offense was committed violates the *ex post facto clause*.") (internal citation omitted). As noted at the outset, we need not decide the merits of this claim.

4

offense involved more than $10,000 a year in unreported income from criminal activity, *i.e.*, the fraud charged in count one.[3] *See* U.S.S.G. § 2T1.1(b)(1).

The district court next calculated Haltom's combined offense level based upon the adjusted offense levels of 20 for mail fraud and 16 for tax evasion. Starting with the higher of the two offense levels, 20, the court applied the formula in section 3D1.4 to reflect the additional harm caused by Haltom's tax crimes. Because the offense level for the tax evasion counts was 4 levels less than the offense level for mail fraud, the application of section 3D1.4 resulted in an increase in Haltom's offense level from 20 to 22.

The district court then reduced appellant's offense level by 3 because he accepted responsibility for his actions and assisted authorities in investigating his own criminal conduct. U.S.S.G. § 3E1.1. Finally, on the government's motion, the district court departed downward 2 levels in recognition of Haltom's substantial assistance in the investigation and prosecution of other persons. U.S.S.G. § 5K1.1. The court thus determined that Haltom's total offense level was 17. Because Haltom had no prior convictions, he was subject to a sentence of 24 to 30 months. *See* U.S.S.G. Ch. 5, Pt. A (Sentencing Table). He was sentenced to a prison term of 26 months on each count, to be served concurrently, followed by three

---

[3]A defendant who fails to report more than $10,000 a year in criminal income is punished more harshly than one who fails to report a comparable amount of legitimate income. U.S.S.G. § 2T1.1(b)(1).

years of supervised release. Haltom also was required to make restitution in the amount of $635,621, and to pay a $5,000 fine.

III.

Appellant does not dispute the accuracy of the district court's arithmetic, but challenges the court's refusal to group the mail fraud count with the tax evasion counts. Had the counts been grouped, Haltom's offense level would not have been increased from 20 to 22. Taking into account the subsequent 5-level reduction in Haltom's offense level, his total offense level would have been 15 rather than 17; the resulting sentence range would have been 18 to 24 months. *See* U.S.S.G. Ch. 5, Pt. A (Sentencing Table).

Chapter 3, Part D of the guidelines prescribes how to sentence a defendant who has been convicted of more than one count. Section 3D1.2 specifies the circumstances in which multiple counts must be grouped together. When counts are grouped, they are essentially treated as a single offense for sentencing purposes. The stated purpose of the grouping rules is to ensure that a defendant convicted of multiple offenses receives "incremental punishment for significant additional criminal conduct." U.S.S.G., Ch. 3, Pt. D, Introductory Commentary. The operative word is "significant." Sometimes, an additional count does not represent significant additional criminal conduct, and does not lead to an increased sentence. As the commentary explains, embezzling money from a bank and falsifying the related bank records are distinct offenses, yet they "represent essentially the same type of wrongful conduct with

6

the same ultimate harm, so that it would be more appropriate to treat them as a single offense for purposes of sentencing." *Id.*

In other circumstances, the guidelines provide that the offense level for one offense must be enhanced to reflect the additional criminal conduct represented by another. In such cases, grouping is appropriate because the additional harm represented by the second count has already been factored into the sentencing calculus as a specific offense characteristic of the first. Under section 3D1.2(c), when the conduct underlying one count is a specific offense characteristic of another count, the counts must be grouped.[4] As the commentary explains:

> Convictions on multiple counts do not result in a sentence enhancement unless they represent additional conduct *that is not otherwise accounted for by the guidelines.* In essence, counts that are grouped together are treated as constituting a single offense for purposes of the guidelines.

*Id.* (emphasis added). According to the commentary, an assault on a bank teller during a robbery would be treated as a specific offense characteristic of the robbery, not as a distinct offense.

Haltom contends that the conduct underlying his mail fraud

---

[4]The relevant text provides:

> All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule:
>
> * * *
>
> (c) When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts.
>
> * * *

U.S.S.G. §3D1.2.

conviction resulted in an enhanced offense level for tax evasion, and that therefore the counts should have been grouped.  We agree.

Haltom's offense level for tax evasion was increased by 2 because his unreported income was derived from criminal activity, *i.e.*, the mail fraud alleged in count one.  It is therefore indisputable that the mail fraud count "embodies conduct that is treated as a specific offense characteristic" of the tax evasion counts.

We recognize that as a matter of common parlance, Haltom's mail fraud and tax evasion convictions cannot readily be said to have caused "substantially the same harm."  *See* U.S.S.G. § 3D1.2. The mail fraud damaged the private financial interests of Haltom's corporate clients; the tax offenses harmed the government.  Absent a contrary directive in the guidelines themselves, we might have considered these harms quite distinct and concluded that Haltom's offenses were not groupable.  However, we are bound by the text of the applicable guideline, which provides explicitly that "[c]ounts involve substantially the same harm within the meaning of this rule . . . [w]hen one of the counts embodies conduct that is treated as a specific offense characteristic in . . . the guideline applicable to another of the counts."  U.S.S.G. § 3D1.2(c).  This definition removes any doubt that Haltom's offenses must be grouped.

Counsel stated at oral argument that the district court felt itself bound, in the absence of controlling Fifth Circuit precedent, to follow a similar case decided by the Third Circuit. *See United States v. Astorri*, 923 F.2d 1052 (3d Cir. 1991).  Even

8

were we bound by the Third Circuit's opinion in *Astorri*, we do not find *Astorri* to be determinative in the instant case.

Dennis L. Astorri was a stockbroker who defrauded investors of substantial sums of money. He pleaded guilty to one count of wire fraud and one count of income tax evasion. The district court, working from the base offense level for mail fraud, enhanced Astorri's offense level by 2 to reflect his tax evasion conviction. The district court gave two alternative grounds for the enhancement. As the court of appeals explained:

> First, the [district] court concluded that if Astorri's wire fraud and tax evasion convictions are grouped together under section 3D1.2, then the specific offense characteristic of the tax evasion offense would increase the offense level by two because Astorri evaded taxes due on money generated by criminal activity. In the alternative, the district court reasoned that if the two offenses were not grouped together because they involved different victims, the court could nonetheless enhance the fraud conviction base offense level under [the formula for combining discrete groups of offenses in] section 3D1.4(a).

*Astorri*, 923 F.2d at 1055-56. The Third Circuit concluded that grouping was inappropriate, but went on to affirm the 2-level enhancement under section 3D1.4.

We believe that *Astorri* is distinguishable from the case we decide today. The conduct underlying Haltom's mail fraud conviction was counted twice toward his sentence, once as the basis for his mail fraud offense level and again a specific offense characteristic of the tax evasion counts. This double-counting actually lengthened Haltom's sentence: the enhanced tax evasion count was directly responsible for the ultimate 2-level increase in

9

his total offense level for mail fraud, from 20 to 22.[5] The purpose of section 3D1.2(c) is to prevent precisely this sort of "'double counting' of offense behavior." U.S.S.G. § 3D1.2, Commentary, Application Note 5. *Cf. United States v. Box*, 50 F.3d 345, 359 (5th Cir. 1995) (internal citation omitted) (stating that double counting is forbidden only where specifically prohibited by the guidelines), *cert. denied*, ---U.S.---, 116 S.Ct. 714, 133 L.Ed.2d 668 (1996).

In contrast, there is no indication in the Third Circuit's opinion that Astorri was the victim of impermissible double-counting. To the contrary, the opinion strongly implies that there was none. Astorri had received an offense level of 19 for fraud and 15 for tax evasion. Applying the formula in section 3D1.4, the district court added 2 levels to the offense level for fraud to reflect the additional harm caused by Astorri's tax evasion. *Astorri*, 923 F.2d at 1057. However, the published opinion contains no hint that Astorri's tax evasion had already been enhanced to reflect the conduct underlying the fraud count. The sentence affirmed in Astorri was based on a district judge's determination to enhance the sentence 2 levels, based on either the specific offense characteristic for tax evasion or under the formula in section 3D1.4. The district judge did not attempt to increase Astorri's sentence twice based on the same conduct.

---

[5]Had Haltom's tax evasion count not involved a failure to report income derived from criminal sources, *i.e.*, mail fraud, his tax evasion offense level would have remained at 14. Under the formula in section 3D1.4, his combined offense level (before the 5-level reduction granted by the district court) would have been 21.

By requiring the grouping of Haltom's tax evasion count with his mail fraud count, the guidelines spare him any incremental punishment for his tax crimes. This result may seem anomalous; but in the circumstances presented here, to avoid punishing Haltom twice for mail fraud, the guidelines impose no punishment at all for tax evasion. However, the guidelines clearly forbid the alternative approach taken by the district court: using the mail fraud count to enhance the offense level for tax evasion and then using the enhanced tax evasion offense level to increase the offense level for mail fraud.

The district court, believing itself bound by *Astorri*, imposed too harsh a penalty by double-counting the conduct underlying Haltom's mail fraud conviction.[6] Perhaps a more Solomonic approach would be to split the difference by assigning Haltom a combined offense level (before downward adjustments) of 21. This would have the neat effect of punishing Haltom for tax evasion without doubly punishing him for mail fraud. King Solomon, however, was not limited by the doctrine of separation of powers. Mindful of that doctrine, we will enforce the sentencing guidelines as far as they are authorized by statute; we will not rewrite them.

The sentence is VACATED and the case REMANDED to the district court for resentencing.

---

[6]After the Third Circuit decided *Astorri*, the Sentencing Commission issued an advisory stating that tax evasion should *always* be grouped with the offense that generated the illegal income--regardless of whether the 2-level increase for criminally derived income was actually applied. *See* Questions Most Frequently Asked About the Sentencing Guidelines, Vol. V, March 1, 1992 (construing U.S.S.G. §§ 3D1.2(c), 2T1.1(b)(1)).