UNITED STATES of America,
Plaintiff–Appellee,

v.

Maria R. LOPEZ, aka Maria R. Huerta,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Jose Eusebio HUERTA, Defendant–
Appellant.

Nos. 95–30230, 95–30236.

United States Court of Appeals,
Ninth Circuit.

Submitted Oct. 11, 1996.*

Decided Jan. 14, 1997.

Elizabeth A. Burr–Jones, Burley, Idaho, for defendant-appellant Lopez.

R. Keith Roark, Roark, Rivers, Baxter & Phillips, Hailey, Idaho, for defendant-appellant Huerta.

Barry McHugh, Assistant United States Attorney, Boise, Idaho, for plaintiff-appellee.

---

* The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a), Ninth Circuit Rule 34–4.

Before: BROWNING, NELSON, and FERNANDEZ, Circuit Judges.

## OPINION

PER CURIAM:

Maria Lopez and Jose Huerta appeal their convictions and sentences.[1] Lopez was convicted of money laundering and conspiracy to distribute marijuana and cocaine. Lopez appeals the district court's refusal to "group" her conspiracy and money laundering convictions for sentencing. *See* U.S.S.G. § 3D1.2. We reverse and remand for resentencing.

## FACTS

A grand jury returned a 26–count indictment against Lopez, Lopez's common-law husband Tomas Huerta, Jose Huerta and other Huerta family members. Lopez was indicted for conspiracy to distribute cocaine and marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 846, and laundering $26,300, in violation of 18 U.S.C. § 1957.

At trial, the government presented evidence that Lopez admitted knowledge of her husband's involvement in the drug business and that she took messages for him. The government demonstrated Lopez transported two kilograms of cocaine; one from California to Idaho and one from California to Nevada. The government also presented evidence that Lopez laundered drug money by exchanging cash for cashier checks eight separate times. Some of the money for which Lopez obtained cashier's checks was marked by an undercover informant. Lopez then posed as Gregoria Huerta and used the cashier's checks to purchase a home for approximately $26,300. The government also demonstrated that neither Lopez nor Tomas had sufficient legitimate income to purchase a home with cash.

1. We address Lopez's sentencing claim in this opinion. Lopez and Huerta also raise several

## STANDARD OF REVIEW

We examine *de novo* the district court's refusal to group these offenses under the Sentencing Guidelines. *See United States v. Rose*, 20 F.3d 367, 371 (9th Cir. 1994).

## ANALYSIS

We conclude that the district court erred in refusing to group Lopez's conspiracy and money laundering convictions for sentencing under § 3D1.2 of the Sentencing Guidelines.

Section 3D1.2 permits grouping of closely related counts. Subsection (b) permits grouping "[w]hen counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan." U.S.S.G. § 3D1.2.

Lopez's crimes satisfy the first requirement of subsection (b) of § 3D1.2. Victimless crimes, such as those involved here, are treated as involving the same victim "when the societal interests that are harmed are closely related." U.S.S.G. § 3D1.2, Application Note 2. The Fifth and Eleventh Circuits have held that the societal interests implicated by drug trafficking and money laundering are not closely related because narcotics distribution "increas[es] lawlessness and violence" while "money laundering disperses capital from lawfully operating economic institutions." *United States v. Gallo*, 927 F.2d 815, 824 (5th Cir.1991); *see also United States v. Harper*, 972 F.2d 321, 322 (11th Cir.1992). We disagree. The money laundering prohibition was adopted as part of the Anti–Drug Abuse Act of 1986. *See* Act of October 27, 1986, Pub.L. No. 99–570, 100 Stat. 3207. The legislative history of § 1957 demonstrates that Congress's primary purposes in prohibiting money laundering were to add a weapon to the arsenal against drug trafficking and to combat organized crime. *See* S.Rep. No. 99–433, at 4, 9–13 (1986); H.R.Rep. No. 99–855, at 8 (1986). The societal interests harmed by money laundering and drug trafficking are closely related:

other claims which we address in an unpublished memorandum disposition.

Narcotics trafficking enables traffickers to reap illicit financial gains and inflict the detrimental effects of narcotics use upon our society; money laundering enables criminals to obtain the benefits of income gained from illicit activities, particularly drug trafficking and organized crime. *See also Most Frequently Asked Questions About the Sentencing Guidelines* 20 (7th ed. 1994) ("[B]ecause money laundering is a type of statutory offense that facilitates the completion of some other underlying offense, it is conceptually appropriate to treat a money laundering offense as 'closely intertwined' and groupable with the underlying offense.").

We do not believe that this position eliminates the money laundering laws as a weapon in the war against drug trafficking. The prohibition against money laundering still stands, and enables law enforcement officials to reach those in a drug conspiracy who clean the proceeds of the illicit activity but do not participate in the underlying criminal conduct. Grouping the crimes of conspirators who engage in both trafficking and laundering merely implements the Sentencing Commission's direction to group closely related counts.

Lopez's crimes also satisfy the second requirement of subsection (b) of § 3D1.2. Lopez's acts of drug trafficking and money laundering were connected by a common criminal objective. Lopez laundered money to conceal the conspiracy's drug trafficking and thus facilitated the accomplishment of the conspiracy's ultimate objective of obtaining the financial benefits of drug trafficking.

We reverse the district court's decision to reject grouping of these offenses under § 3D1.2 and remand for the district court to resentence Lopez.

REVERSED AND REMANDED.

FERNANDEZ, Circuit Judge, dissenting:

I respectfully dissent.

Lopez argues that the district court should have grouped her conspiracy conviction with her money laundering conviction for sentencing purposes. Under the Guidelines, the sentencing court must group counts involving "substantially the same harm." USSG § 3D1.2.[1] There are four measures of "substantially the same harm." Subsections (a) and (b) focus on counts involving the same victim. USSG § 3D1.2(a)-(b). Subsection (c) requires grouping when "one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts." USSG § 3D1.2(c). Finally, subsection (d) provides that counts involve substantially the same harm "[w]hen the offense level is determined largely on the basis of the total amount of harm or loss" or when the counts were "continuous in nature and the offense guideline is written to cover such behavior." USSG § 3D1.2(d). Section 3D1.2(d) lists several offenses which should be grouped, including the offenses at issue here, which are governed by USSG §§ 2D1.1 and 2S1.2.

Lopez does not articulate which subsection she believes applies here; in response, the government relies solely on cases discussing subsection (d). Lopez also fails to cite any case law, and relies solely on the *Most Frequently Asked Questions About the Sentencing Guidelines* (MFAQ), written by the Sentencing Commission's Training Staff. MFAQ (7th ed. June 1, 1994). While the MFAQ, by its own terms, is not definitive and is not binding on the courts or the Commission, it does raise an interesting question in this case, a question to which the Staff (and Lopez) gives the wrong answer.

MFAQ number 65 queries: "Can a count of money laundering be grouped with a count of drug distribution when the offense behavior involved laundering the proceeds of a drug distribution scheme?" MFAQ at 20. The answer, according to the Commission Staff, is "yes," at least "[i]n most cases." *Id.* First, the Staff concludes that these offenses have the same victim, and thus should be grouped under subsection (a) or (b). Next, it explains that subsection (c) provides an "alternative" to subsections (a) and (b) when the defendant's "sole function in the drug operation was to 'clean' the money." *Id.* at 21. Subsection (d) is not addressed.

---

1. I refer to the Guidelines effective November 1, 1994 unless otherwise stated.

Notwithstanding the MFAQ, grouping is not required by either subsection (a) or (b) because these offenses do not involve the same victim. In *United States v. Barron–Rivera,* 922 F.2d 549, 554–55 (9th Cir.1991), we held that where two offenses were victimless, grouping is based upon the nature of the offense. If they "pose threats to distinct and separate societal interests" they do not involve the same victim. *Id.* at 555. We cited the application note to the Guideline itself for that proposition. *See* USSG § 3D1.2, comment. (n. 2). We declared that the offense of being an illegal alien in the United States after deportation was separate from the offense of being an illegal alien in possession of a firearm. *Barron–Rivera,* 922 F.2d at 554. Although the victim in each case was society at large, the former law enforced immigration rules, while the latter protected society against those who were not entitled to possess firearms. *Id.* at 555.

The Fifth Circuit has pointed out that the offenses in question here yield to the same analysis. *United States v. Gallo,* 927 F.2d 815, 823–24 (5th Cir.1991). They too involve different victims because they invade "distinct societal interests"; narcotics distribution increases violence while money laundering "disburses capital from lawfully operating economic institutions to criminals." *Id.* at 824. The Eleventh Circuit has explicitly adopted that reasoning. *See United States v. Harper,* 972 F.2d 321, 322 (11th Cir.1992)(per curiam). I agree with them. The prohibition against narcotics distribution protects society from the evils wrought by that facinorous conduct. It would apply even if no money was involved and a distributor of drugs gave them away for some warped altruistic purpose. The prohibition against money laundering protects society from the disbursement of capital earned by criminals by and to criminals through the use of the lawful economy of the country. While both taint our polity, the former taints our people; it injures their bodies and minds. The latter taints our institutions; it uses otherwise legitimate means to transfer or hide illegitimate gains. Thus, these offenses cannot be grouped under subsections (a) or (b).

Similarly, on the facts of this case grouping is not available under subsection (c). Application note 5 to section 3D1.2 explains that the purpose of subsection (c) is to avoid " 'double counting' of offense behavior" and thus it "applies only if the offenses are closely related." USSG § 3D1.2, comment. (n. 5). In this case, the district court sentenced Lopez for money laundering under USSG § 2S1.2. The court applied that Guideline's requirement of a five-level increase in the offense level because Lopez knew that the laundered funds were the proceeds of unlawful narcotics activity. *See* USSG § 2S1.2(b)(1)(A). Thus, it is important to ensure that her behavior in conspiring to distribute narcotics was not somehow "double counted" through the five-level increase and the district court's refusal to group the offenses.

On the facts of this case that assurance exists. There was no "double counting" of the "offense behavior"; subsection (c) does not apply. As the Commission Staff recognized, if the defendant "was both distributing drugs and laundering money, it becomes conceptually problematic to say that the specific offense characteristic in the money laundering guidelines treats the conduct embodied in a related drug distribution; distributing drugs is not conduct equivalent to knowledge that funds were the proceeds of drug distribution." MFAQ at 21. That perfectly describes Lopez's activities. She aided in the activity of narcotics distribution and engaged in the separate activity of money laundering. While one who distributes narcotics must know the origin of the proceeds, one can certainly know the origin without distributing narcotics.

This conclusion is supported by several cases interpreting subsection (c). We have said that subsection (c) prevents multiple punishments for "substantially identical" conduct, but may not be used to lower punishment for offenses that are not substantially identical. *See Barron–Rivera,* 922 F.2d at 554 (quotation omitted). We reaffirmed that rule in *United States v. Hines,* 26 F.3d 1469, 1475–76 (9th Cir.1994). In *Hines,* we noted that the "substantially identical" standard ensures that offenses causing different harms

are not improperly grouped under section 3D1.2. *Id.* at 1475. As I have already said, the conduct in question here does involve different harms.

Moreover, the First Circuit followed the same reasoning in *United States v. Lombardi,* 5 F.3d 568, 571 (1st Cir.1993). It explained that knowing of the illegal act used to obtain money is not the same as actually committing the illegal act to procure that money. *Id.* Therefore, money laundering should not be grouped with another offense when the defendant committed the other offense through a separate act, and then knowingly laundered the money gained from that offense. Otherwise, the defendant would not be punished for both acts, even though "[o]ne who commits [an offense which produces money] *and* launders the money (thereby knowing of its source) is normally more culpable than one who *merely* launders the money knowing of its source." *Id.* (emphasis in original).

Again, Lopez was not a drug distributor simply because she laundered the money; she was a drug distributor because, among other activities, she transported two kilograms of cocaine. Allowing her to group her money laundering and distribution offenses, which were not substantially identical and were based on separate acts, allows her to avoid punishment for some of her conduct. Lopez is not entitled to grouping under subsection (c).

Finally, grouping is not appropriate under subsection (d). Guidelines section 3D1.2 deals with closely related counts. In one way or another, courts have tended to look to the relationship between counts when making grouping decisions. *See, e.g., United States v. Taylor,* 984 F.2d 298, 303 (9th Cir. 1993) (when the Guidelines measure harm differently, the counts should not be grouped); *Harper,* 972 F.2d at 322 (drug trafficking and money laundering offenses should not be grouped because they are not closely related); *United States v. Johnson,* 971 F.2d 562, 576 (10th Cir.1992) (wire fraud and money laundering counts should not be grouped because they measure harm differently); *Gallo,* 927 F.2d at 823–24 (money

laundering and drug offenses are not closely related).

In *United States v. Rose,* 20 F.3d 367 (9th Cir.1994), we explored grouping under subsection (d) further. While we did refer to the fact that offenses which measure harm differently are not grouped, we did not place weight on that concept. Rather, we found that under the peculiar facts of the case the offenses of wire fraud and money laundering should be grouped. *Id.* at 371–72. We did so because the wire fraud counts were "a mere subset" of the money laundering counts and involved the same monetary harm. *Id.* at 372–73. In *Harper,* the Eleventh Circuit applied a somewhat similar rule to money laundering and narcotics distribution and concluded that those offenses could not be grouped. The court explained that, among other things, "drug trafficking and money laundering are not crimes 'of the same general type;' nor are these offenses, under [the] facts, closely related." *Harper,* 972 F.2d at 322. In so stating, the court relied, in part, upon the Guideline notes which do indicate that subsection (d) applies to the grouping of offenses "of the same general type." *See* USSG § 3D1.2, comment. (n. 6). In closing, *Harper* also rejected any argument that the conduct in that case was "ongoing or continuous in nature" as contemplated by the second clause of § 3D1.2(d). *Harper,* 972 F.2d at 322.

Therefore, grouping of Lopez's offenses under subsection (d) is also erroneous. As in *Harper,* on the facts of this case, Lopez's trafficking and laundering offenses are not of the same general type and are not closely related. Although her money laundering activity cleansed some of the funds that were derived from the drug trafficking scheme, Lopez's participation in the trafficking scheme also produced funds that were not laundered. Thus, this case is different from *Rose.* There "the monies subject to wire fraud counts ... were a mere subset of, if not co-extensive with, the sums involved in ... money laundering." 20 F.3d at 372. Here, it cannot be said that all of Lopez's narcotics trafficking was "a mere subset of, if not coextensive with," her money laundering activities. Thus, the offenses are not closely

related and should not be grouped under subsection (d).

Moreover, Lopez has made no attempt to show how her conduct could qualify for grouping under the "continuous in nature" clause of subsection (d), and I do not see how she could. She has never asserted that her laundering of money by the isolated purchase of a home was "ongoing or continuous" in nature. It was not. I agree with the Eleventh Circuit's observation that:

> To hold otherwise would mean that every act of money laundering would be closely related to the underlying crime which produced the laundered money. This result is contrary to common sense and to § 3D1.2's mission to incrementally punish significant additional criminal conduct.

*Harper*, 972 F.2d at 322–23 (quoting *United States v. Porter*, 909 F.2d 789, 793 (4th Cir. 1990)).

In fine, when the Guidelines were created, the Commission sought to achieve uniformity while taking into account factors which were relevant in pre-Guideline sentencing procedure. In other words, to some extent it sought to reflect those distinctions which the wisdom of judges, legislators and the community had found to be important over time. USSG Chapter 1, part A, ¶ 3.

While achieving that goal often leads us along a torturous path, that path frequently leads to an answer which a thoughtful district judge could have intuited. That is the case here. A great deal of analysis of detailed, even arcane, guideline provisions is required. However, the end result should be that when a person has committed the crime of narcotics distribution *and* a still further crime of money laundering, that person has earned a sentence which is measurably greater than the sentence earned by a person who committed only one crime. As I see it, Section 3D1.2 yields that result by allowing separate grouping. Pre–Guidelines determinations by a district judge would likely have done the same. While it *is* the Guidelines which count, that is a happy congru-

ence, and should lead to an affirmance in this case.

Thus, I respectfully dissent.

