REVISED - August 27, 1999

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

---

**No. 98-51054**

---

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**VERSUS**

**GLEN MOORE RICE, JR.,**
**also known as Ivan Rice, also known as Billy Rice,**
**also known as John Smith, also known as James Gregory,**

**Defendant-Appellant.**

---

Appeal from the United States District Court
for the Western District of Texas

---

August 12, 1999

Before REYNALDO G. GARZA, HIGGINBOTHAM, and DAVIS, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

### I. FACTUAL AND PROCEDURAL BACKGROUND

On February 17, 1997, Glen Moore Rice, Jr. ("Rice") and a co-defendant, James Gregory[1] ("Gregory"), were arrested in a hotel room in Lewisville, Texas, on the basis of an outstanding federal warrant for Rice. The agents executing the warrant found a briefcase containing $34,522, a drug ledger and a small amount of marijuana. The agents discovered that Gregory had leased a warehouse storage facility in Dallas, Texas. Later that evening, a search

---

[1] James Gregory is the name of a coconspirator and is also one of Rice's aliases.

1

warrant was executed at the warehouse storage facility. Agents found two large overseas shipping containers in the area leased by Gregory. One container concealed a processing and packing plant where marijuana was vacuum packed, sealed and labeled for distribution and shipment. The other container held many wardrobe size boxes that enclosed bundles of vacuum-packed marijuana sealed in Mylar packing material. Each box was labeled with the weight of the box and the letter "D" or "E". These weights and letters corresponded to the drug ledger seized from Rice's hotel room. The ledger recorded Rice's receipt of over 27,000 pounds of marijuana. A total of 9,031 pounds of marijuana was seized from the boxes. This marijuana was transported to Dallas from Laredo.

Subsequently, Gregory told agents that the source of the marijuana operated through a Mexican national named Nicolas Ingues-Herrera who was known as Nico ( "Nico"). After obtaining Nico's address from Rice, the agents traveled to Nico's residence and found him in the house with three other Mexican nationals. A search of home revealed three boxes containing a total of $447,350, ledger sheets, money orders, maps and other evidence. The currency was located in Nico's bedroom. The $447,350 came from Rice, who had given it to Nico as payment for a load of marijuana that had been fronted and passed. Nico knew the source of the funds and was in the process of transporting the funds to Mexico.

While processing evidence seized at various locations, agents discovered evidence that Rice and Gregory were leasing warehouse space in the Phoenix, Arizona area. A search conducted at that warehouse revealed two large overseas shipping containers similar to those found in the Dallas warehouse. One of the containers held a packing plant and the other was empty. In addition, agents located more warehouses used by Rice and his organization[2] in South El Monte, California, and Ontario, California,

Rice's organization began as early as 1991 and continued until the date of his arrest. Nico

---

[2]The warehouses were used between 1992 and 1996.

ensured that the loads of marijuana arrived at the warehouses and that the payment for the marijuana was transported to the supplier in Mexico. Rice and others would then ensure the quality of the marijuana and its weight, and then repackage and ship it from the warehouses to buyers in other states.

Rice and other codefendants were charged in a seven-count indictment with conspiracy to distribute marijuana, possession of marijuana with intent to distribute, importing marijuana, engaging in a criminal enterprise, and two counts of money laundering. Subsequently, Rice pled guilty to four counts of a superseding indictment charging conspiracy to distribute and possess with intent to distribute marijuana, possession with intent to deliver marijuana, importation of marijuana and money laundering. Rice pled guilty without a plea bargain and did not waive his right to appeal. At sentencing, Rice objected to the money laundering count not being grouped with the three drug related counts under § 3D1.2 of the Sentencing Guidelines. The district court overruled the objection and sentenced Rice to 360 months of imprisonment on each of the drug counts and to a concurrent 240 months of imprisonment on the money laundering count. Rice was sentenced to five years of supervised release on the drug counts and three years on the money laundering count. Rice was also assessed a $20,000 fine on each of the four counts, for a total fine of $80,000.

This appeal followed.

## II. STANDARD OF REVIEW

We review the trial court's application of the Sentencing Guidelines *de novo* and its findings of fact under a clearly erroneous standard. *United States. v. Crow*, 164 F.3d 229, 238 (5th Cir.), *cert. denied*, 119 S.Ct. 2051 (1999).

## III. DISCUSSION

Rice contends that the district court erred in failing to group his drug-related counts with his money laundering count for sentencing purposes pursuant to U.S.S.G. §3D1.2 (c) and (d).

3

Section 3D1.2 provides:

> All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule:
>
> (a) When counts involve the same victim and the same act or transaction.
>
> (b) When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.
>
> (c) When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts.
>
> (d) When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

§ 3D1.2 (a)-(d). Section 3D1.2 then divides offenses into three categories regarding grouping: (1) those to which the section specifically applies; (2) those to which the section specifically does not apply; and (3) those for which the grouping may be appropriate on a case by case basis. *United States v. Gallo*, 927 F.2d 815, 823 (5th Cir. 1991). Rice's offenses fall within the third category because not all of his offenses are specifically included or specifically excluded under § 3D1.2(d). *See id.* "The offense level determination for this third category 'is in some parts legal rather than factual, and is not shielded by the clearly erroneous standard.'" *Id.* (quoting *United States v. Pope*, 871 F.2d 506, 509 (5th Cir. 1989)). Therefore, in our review, we must give due deference to the district court and respect its informed judgments. *Gallo*, 927 F.2d at 823.

Rice argues that the drug related counts and the money laundering count should have been grouped together for sentencing purposes. He contends that the district court erred because the money laundering was a continuous and ongoing part of his drug related offenses, as required for grouping under § 3D1.2(d) ("subsection (d)"). Furthermore, Rice maintains that grouping was required under § 3D1.2(c) ("subsection (c)") because his money laundering sentence was enhanced under § 2S1.1(b)(1) on the basis that he knew the money he laundered constituted drug

proceeds. Therefore, he asserts that he is being punished twice for the same conduct because the drug counts embody conduct that is treated as a specific offense characteristic under § 2S1.1(b) and increased his offense level for the money laundering count by three levels. Rice relies upon *United States v. Haltom*, 113 F.3d 43, 45-47 (5th Cir. 1997), in support of his arguments and contends that *Gallo* is distinguishable. We find that Rice's arguments have merit.

We will first address subsection (c). The purpose of subsection (c) is to avoid "'double counting' of offense behavior" and thus it applies "only if the offenses are closely related." § 3D1.2 commentary, Application Note 5. The district court sentenced Rice for money laundering under § 2S1.1(b)(1). The court applied that Guideline's requirement of a three-level increase in money laundering offense level because Rice knew that the laundered funds were the proceeds of unlawful drug activity. Thus, it is essential for this Court to determine whether Rice's drug offenses were "double counted" through the three-level increase.

Although *Gallo* is factually similar to our present case[3], in *Gallo* we failed to address subsection (c). Thus, the only case within our Circuit that addresses subsection (c) is *Haltom*. In *Haltom* we reversed the district court's refusal to group together one count of mail fraud with four counts of tax evasion for sentencing purposes. *Haltom*, 113 F.3d at 47. The district court applied a two-level increase to Haltom's offense level for tax evasion because his unreported income was derived from criminal activity, the mail fraud count. *Id.* at 45. In *Haltom*, we stated that subsection (c) requires grouping where one of the counts embodied conduct that was treated as a specific offense characteristic in the guideline applicable to another of the counts. *Id.* at 46. Thus, we found that the counts should have been grouped under subsection (c) because the conduct underlying Haltom's mail fraud conviction was counted twice toward his sentence; once as the basis for his mail fraud offense level, and again as a specific offense characteristic of the tax

---

[3]The district court refused to group two drug offenses with a money laundering offense under § 3D1.2. However, this Court in affirming the district court's decision failed to discuss subsection (c).

evasion count. *Id.* We stated that the purpose of subsection (c) is to prevent precisely this sort of double counting of offense behavior. *Id.* at 46-47 (quotations omitted). In addition, this Court noted that the grouping of Haltom's tax evasion count with his mail fraud count spared him any incremental punishment for his tax crimes. Nevertheless, we determined that " to avoid punishing Haltom twice for mail fraud, the guidelines impose no punishment at all for tax evasion." *Id.* at 47.

In following this Circuit's precedent, we apply *Haltom* to this case. Rice's drug offenses were counted twice toward his sentence; once as the basis for his conviction on his drug counts, and again as a specific offense characteristic of the money laundering count. This had the effect of increasing Rice's money laundering offense level by three pursuant to § 2S1.1(b) because he knew or believed the funds he was receiving were the proceed of the unlawful distribution of marijuana. Thus, it is apparent that the drug offenses were used to enhance the money laundering offense level just as the mail fraud offense in *Haltom* was used to enhance the tax offense level. Therefore, we find that Rice's offense behavior was impermissibly double counted. Accordingly, we hold that the district court erred in failing to group Rice's counts for sentencing purposes as required by subsection (c). Furthermore, because subsection (c) requires that Rice's counts be grouped together for sentencing purposes, there is no need for this Court to address subsection (d) and its applicability to this case.

## IV. CONCLUSION

For the aforementioned reasons, we VACATE Rice's sentence and hereby REMAND to the district court for resentencing.