PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

            v.                                    No. 98-4317

RORY BARTLEY, a/k/a Roy Bailey,
            *Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
Charles H. Haden II, Chief District Judge.
(CR-97-157)

Argued: June 5, 2000

Decided: October 26, 2000

Before WILKINSON, Chief Judge, and MICHAEL and
MOTZ, Circuit Judges.

Affirmed in part, reversed in part, vacated in part, and remanded by
published opinion. Judge Motz wrote the majority opinion, in which
Judge Michael joined. Chief Judge Wilkinson wrote a dissenting
opinion.

## COUNSEL

**ARGUED:** Kevin B. Burgess, HAMILTON, BURGESS, YOUNG &
POLLARD, P.L.L.C., Oak Hill, West Virginia, for Appellant. Louise
Anna Crawford, OFFICE OF THE UNITED STATES ATTORNEY,
Charleston, West Virginia, for Appellee. **ON BRIEF:** Rebecca A.

Betts, United States Attorney, John C. Parr, Assistant United States Attorney, Charleston, West Virginia, for Appellee.

## OPINION

DIANA GRIBBON MOTZ, Circuit Judge:

Rory Bartley pled guilty to one count of conspiracy to distribute marijuana and one count of conspiracy to launder money. On appeal, Bartley challenges only his sentence. Because the district court erred in refusing to group Bartley's offenses, but did not err in finding Bartley's managerial role in the conspiracy justified an enhancement, we affirm in part, reverse in part, and vacate and remand for resentencing.

## I.

Edwin Bruce recruited Bartley to participate in a marijuana distribution network based in Charleston, West Virginia. Bruce introduced Bartley to a number of interested buyers, including street dealers. Bartley regularly distributed marijuana to these dealers from Bruce's supply and made wire transfers to California to purchase marijuana on Bruce's behalf.

Bartley eventually disaffiliated from Bruce and located another marijuana supplier, but he maintained his associations with some of Bruce's street dealers and at times obtained marijuana from Bruce's distributors. Ultimately, Bartley expanded his drug distribution activities to Parkersburg, West Virginia, and directed one of his street dealers to identify addresses there to which marijuana could be mailed.

Bartley's street dealers would distribute the marijuana and wire transfer the proceeds on Bartley's instruction, often to his uncle Claudius Pryce in New York. Bartley himself would also wire funds from his drug proceeds to various family members.

Bartley was charged with conspiracy to distribute marijuana, distribution of marijuana, conspiracy to launder money, and two counts of

money laundering. After plea negotiations, he pled guilty to the two conspiracy counts and the district court proceeded to sentence him. In calculating Bartley's offense level under the Sentencing Guidelines, the court began with the drug distribution conspiracy and assigned a base offense level of 28 predicated upon the amount of marijuana involved in the offense. *See* U.S. Sentencing Guidelines Manual § 2D1.1(a)(c) (1998). The court then applied a three-level enhancement for Bartley's role as a supervisor or manager in the conspiracy, *see id.* § 3B1.1(b), resulting in an adjusted offense level of 31 for the drug distribution count. For the money laundering conspiracy, the district court assigned a base offense level of 23 under U.S.S.G. § 2S1.1(a)(1) and applied the same three-level enhancement based on Bartley's role in the offense. The court then applied another three-level enhancement based on Bartley's knowledge that the laundered funds were drug proceeds under U.S.S.G. § 2S1.1(b)(1), resulting in an adjusted offense level of 29 for this count.

The district court did not group the two conspiracy counts together into a single "Group" under Part D of Chapter 3 of the Sentencing Guidelines. Instead, the court treated the two counts as distinct, and, in accordance with U.S.S.G. § 3D1.4(a), the court started with the greater of the two offense levels — 31, for the drug conspiracy — and then added two more levels because the adjusted offense level for the money laundering conspiracy was only two levels less serious than that for the drug conspiracy. This resulted in a combined adjusted offense level of 33. Finally, the court credited Bartley with a three-level downward adjustment for his acceptance of responsibility, *see id.* § 3E1.1, for a total offense level of 30, and sentenced him to 109 months imprisonment.

On appeal, Bartley contends that the district court erred in failing to group the two conspiracies for sentencing purposes. He also contends that the government offered insufficient evidence to support the district court's imposition of the enhancements for his alleged role in the conspiracies. We review a district court's legal interpretation of the Sentencing Guidelines de novo, *see United States v. Williams*, 152 F.3d 294, 302 (4th Cir. 1998), and its underlying factual determinations in applying the Guidelines for clear error. *See* 18 U.S.C. § 3742(e); *United States v. France*, 164 F.3d 203, 209 (4th Cir. 1998), *cert. denied*, 527 U.S. 1010 (1999).

## II.

Bartley first argues that the two conspiracy counts should have been grouped in calculating his combined adjusted offense level. Section 3D1.2 of the Sentencing Guidelines provides for the grouping of closely related counts, or those that "involv[e] substantially the same harm." The Guidelines identify four situations in which counts should be grouped together for sentencing purposes:

(a)   When counts involve the same victim and the same act or transaction.

(b)   When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.

(c)   When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts.

(d)   When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

U.S.S.G. § 3D1.2.

In an addendum to Bartley's Presentence Report (PSR), the probation officer cited subsection (b) and application note 2 to explain why he treated the two conspiracy counts as separate groups. In the officer's opinion, the conspiracies harmed distinct societal interests and therefore did not involve "the same victim." Bartley objected to the PSR. Although the government agreed with the probation officer's analysis of subsection (b), it also brought to the district court's attention the potential relevance of subsection (c) as a basis for treating the

conspiracy counts as one group. Nonetheless, in refusing to group the offenses, the district court simply determined that each of the conspiracies harmed a distinct societal interest and did not involve "the same victim" as required by subsection (b); the court never reached the question of grouping on the basis of subsection (c).

For purposes of this appeal, we assume, without deciding, that the conspiracies impact different societal interests, and so grouping the counts under subsection (b) would be improper. *See United States v. Harper*, 972 F.2d 321, 322 (11th Cir. 1992) (refusing to group under subsection (b)); *United States v. Gallo*, 927 F.2d 815, 824 (5th Cir. 1991) (same). *But see United States v. Lopez*, 104 F.3d 1149, 1150-51 (9th Cir. 1997) (grouping under subsection (b) proper); United States Sentencing Commission, *Most Frequently Asked Questions About the Sentencing Guidelines*, 20-21 (7th ed. 1994) ("Most Frequently Asked Questions") (grouping under subsections (a), (b), or (c) proper).[1] The commentary to § 3D1.2, however, provides that "[c]ounts are to be grouped . . . if *any one* or more of the subsections provide for such grouping." U.S.S.G. § 3D1.2, comment. (n.1) (emphasis added); *see also id.*, comment. (backg'd.) ("Counts involving different victims (or societal harms in the case of 'victimless' crimes) are grouped together only as provided in subsection (c) or (d)."). Thus, even if grouping would be improper under subsection (b), it may be proper under another subsection.

To prevent "double counting," subsection (c) requires offenses to be grouped when one count "embodies conduct that is treated as a specific offense characteristic in, or other adjustment to," the offense level calculation of the other count. U.S.S.G. § 3D1.2(c); *see also id.* § 3D1.2, comment. (n.5). In calculating Bartley's offense level for the conspiracy to launder money, the district court, as recommended in the PSR, applied a three-level enhancement because Bartley "knew or believed that the funds were the proceeds of an unlawful activity involving the . . . distribution of narcotics or other controlled substances." U.S.S.G. § 2S1.1(b)(1). In this case, grouping under subsection (c) was required. As the only circuit to consider grouping money laundering and drug distribution charges, explained:

---

[1] Accordingly, we do not reach the issue addressed at length in Part I of the dissent.

> Rice's drug offenses were counted twice toward his sen-
> tence; once as the basis for his conviction on his drug
> counts, and again as a specific offense characteristic of the
> money laundering count. This had the effect of increasing
> Rice's money laundering offense level by three pursuant to
> § 2S1.1(b) because he knew or believed the funds he was
> receiving were the proceed[s] of the unlawful distribution of
> marijuana. . . . Therefore, we find that Rice's offense behav-
> ior was impermissibly double counted. Accordingly, we
> hold that the district court erred in failing to group Rice's
> counts for sentencing purposes as required by subsection
> (c).

*United States v. Rice*, 185 F.3d 326, 329 (5th Cir. 1999).

In reaching this holding the Fifth Circuit relied on its earlier deci-
sion in *United States v. Haltom*, 113 F.3d 43, 46 (5th Cir. 1997),
which involved one count of mail fraud and four counts of tax eva-
sion. The *Haltom* court held that subsection (c) required the counts to
be grouped where the district court applied a two-level enhancement
under U.S.S.G. § 2T1.1(b)(1) in calculating the offense level for the
tax evasion counts because the defendant's unreported income
derived from criminal activity, i.e., mail fraud. The court explained
that "[b]y requiring the grouping of Haltom's [offenses], the guide-
lines spare him *any incremental punishment* for his tax crimes. . . .
[T]he guidelines clearly forbid . . . using the mail fraud count to
enhance the offense level for tax evasion and then using the enhanced
tax evasion offense level to increase the offense level for mail fraud."
113 F.3d at 47 (emphasis added).

Bartley, like Rice, received the three-level enhancement under
U.S.S.G. § 2S1.1(b)(1) for his knowledge that the laundered funds
were the proceeds of unlawful drug distribution activities. As such,
here, as in *Rice*, conduct embodied by the conspiracy to distribute
marijuana conviction was double counted: "the enhanced . . . count
was directly responsible for the ultimate 2-level increase in his total
offense level" — from 31 to 33 — under U.S.S.G. § 3D1.4. *Haltom*,
113 F.3d at 46.[2] Of course, subsection (c) "applies only if the offenses

---

[2]Had the three-level enhancement under U.S.S.G. § 2S1.1(b)(1) not
been imposed, Bartley's offense level for the money laundering conspir-

are closely related." U.S.S.G. § 3D1.2(c), comment. (n.5). Although the district court found that the counts were not "inter-related[ ]" for purposes of subsection (b) because each conspiracy caused a different societal harm, obviously the drug and money laundering conspiracies were "closely related" under subsection (c). Indeed, both the indictment and the PSR explicitly refer to the association of the two conspiracies, and the district court found that the money laundering "was to conceal and move the proceeds . . . [and] to get those proceeds to other individuals who were in the consignment or fronting chain of command of the drugs."

Nevertheless, the government and the dissent maintain that subsection (c) does not apply to Bartley's case because the specific offense characteristic at issue does not punish for the actual distribution or transport of drugs, but rather for the knowledge that the laundered funds were drug proceeds. According to the government and the dissent, this knowledge is a separate act of criminal conduct not mirrored in the drug conspiracy count. To adopt this argument would promote an approach to the Sentencing Guidelines that would require district courts to unnecessarily "split hairs" or guess congressional intent in evaluating which specific offense characteristics or other adjustments are covered by subsection (c). Moreover, if we followed this approach, we could never group a money laundering offense with a drug offense. *But see* Most Frequently Asked Questions, *supra*, 21 ("§ 3D1.2 would call for grouping of related drug trafficking and money laundering counts under one or more of rules (a), (b), or (c).").

Furthermore, whatever the merit of this approach in a given case — and our good friend Judge Wilkinson in dissent makes about as good a case for this approach as possible — we cannot conclude it should be followed here. Subsection (c), after all, requires a court, when determining whether to group offenses, to consider the conduct embodied in each of a defendant's multiple counts. In this case, the

---

acy would have been 26. His offense level for the drug distribution conspiracy would have remained at 31. According to U.S.S.G. § 3D1.4(b), the combined offense level would have been 32, not 33, because the money laundering conspiracy would have been counted as only one-half unit, thus requiring an increase of only one level rather than two.

conduct embodied by the drug conspiracy count is extremely expansive. Indeed, the indictment specifically alleges that "[i]t was further a part of the [drug] conspiracy that in order to finance their ongoing illegal activity, the defendants . . . would and did use Western Union money transfers, United Parcel Service, and other couriers" to transfer proceeds from marijuana sales "in order to finance their ongoing illegal activity." In considering whether to group the offenses, we cannot treat the "conduct" embodied in the drug conspiracy count as constituting only acts of drug distribution when in fact the offense conduct the indictment actually charges in this conspiracy count includes laundering drug proceeds to facilitate illegal drug distribution activities.

The dissent contends that because "the guidelines use the words 'counts' and 'offenses' interchangeably," *post* at 17, the Guidelines intend a court to confine its grouping analysis to the legal elements of an "offense" rather than the conduct charged in the indictment. Examination of the terms "count" and "offense" as used throughout the Guidelines, however, leads inevitably to the contrary conclusion that those terms encompass more than the elements of a crime. Indeed, Chapter Two of the Guidelines repeatedly uses the term "offense characteristics," and a review of what the Commission considers "characteristics" of an "offense" makes clear that "offense" includes aspects of a crime other than its elements. For example, the Commission states that whether a defendant "knew" the source of laundered funds is a "characteristic" of the "offense" of money laundering. § 2S1.1. Since knowledge of the source of laundered funds is not an "element" of the "offense" of money laundering, the Commission obviously included more than the "elements" of a crime within its definition of "offense."[3]

Nor does our holding that a court, when grouping, must examine

---

[3]We also note that defining "offense" or "count" as the dissent suggests would contradict the commentary of the Guidelines pertaining to § 3D1.2(a) and (b). That commentary supports grouping of auto theft and alteration of a vehicle's identification when those "counts involve . . . a common scheme or plan." § 3D1.2, comment. (n.4). Were a court to limit analysis of those two offenses to their legal elements, and not look at the facts as established in an indictment, it would always be unable to find that these two crimes involved a common scheme or plan.

the facts charged in the indictment cede power to prosecutors or allow them to "manipulate" a defendant's sentence. *Post* at 17. Rather, by restricting the grouping analysis to the "elements" of an offense, the dissent would advance a one-size-fits-all scheme in which certain offenses, and only those offenses, can be grouped. Leaving aside the fact that the Commission likely would have provided such a list had it intended courts to apply the Guidelines in this manner (as it similarly did in § 3D1.2(d)), the dissent's approach would rob a sentencing judge of any means to check a prosecutor's power to manipulate the required grouping by picking and choosing under which statutes to indict. Moreover, preserving authority in the sentencing court to examine the specific conduct charged in the indictment does not create the "complexity" the dissent fears, *post* at 17; a judge ought to be familiar with the indictment whenever he imposes a sentence and should naturally consider the facts contained therein during sentencing.

This case thus significantly differs from *United States v. Lombardi*, 5 F.3d 568 (1st Cir. 1993), on which the dissent heavily relies. *Lombardi* involved no conspiracy counts but charges of mail fraud and money laundering that were separable; Lombardi fraudulently secured insurance proceeds and then deposited the proceeds in a bank. There is no indication that Lombardi's deposits in any way facilitated ongoing or future mail fraud, or that the indictment specifically charged that they did. The rationale of *Lombardi* simply does not apply here.[4]

---

[4]We also note that although Bartley would have received the same enhancement for the money laundering count had he not been involved in the actual distribution of the marijuana but had come to know that the laundered funds were drug proceeds, that situation creates no "anomaly" in this case. *See post* at 18. Bartley will receive a longer sentence for participating in the drug conspiracy than he would have had he merely known the source of the laundered funds. If Bartley had been charged with (or pled guilty to) only the money laundering conspiracy, his total offense level would have been 26, assuming the district court would have applied the same adjustments for his role in the offense, knowledge that the funds were drug proceeds, and acceptance of responsibility. But, having pled guilty to both conspiracies, the drug distribution count results in a higher adjusted offense level, 31, which is the starting point for the calculation of the offense level for multiple counts. If the counts are

Although there may be conceptual difficulty in some cases in characterizing "knowledge" that the laundered funds were drug proceeds as "conduct" embodied in a count charging drug violations, there is none here. Unlike *Lombardi*, in this case the indictment quite clearly charges a drug conspiracy that includes use of drug proceeds in money laundering to facilitate illegal drug distribution. Therefore, after the district court enhanced Bartley's money laundering sentence because of his knowledge that laundered funds were proceeds of a drug conspiracy, the court should have grouped the two conspiracy counts.

The Sentencing Commission has explained that the Guidelines provisions governing the grouping of multiple counts are intended to enhance a defendant's sentence *only* if the multiple counts "represent additional conduct that is not otherwise accounted for by the guidelines." U.S.S.G. Ch. 3, Pt. D, intro. comment. Therefore, grouping is appropriate in Bartley's case because the drug conspiracy count, as set forth in the indictment, "embodies conduct" — money laundering of funds that were proceeds from illegal drug distribution (and knowledge of that conduct) — "that [wa]s treated as a specific offense characteristic in" calculating the offense level for the money laundering conspiracy count. U.S.S.G. § 3D1.2(c); *see also id.* § 2S1.1, comment. (backg'd). Accordingly, the district court erred in failing to group the two conspiracy counts.

III.

Bartley contends that the district court also erred in finding that he exercised a managerial or supervisory role in the conspiracies, a finding the court used to justify a three-level enhancement in calculating the adjusted offense level for each count. *See* U.S.S.G. § 3B1.1(b).

---

grouped, the total offense level would be 28 (again assuming an adjustment for acceptance of responsibility); not grouping the counts results in a total offense level of 30. Either way, Bartley's greater degree of culpability for participating in both conspiracies is reflected in a higher total offense level.

Section 3B1.1(b) of the Guidelines provides for a sentencing enhancement "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(b). The commentary to this section also states that "[a]n upward departure may be warranted . . . in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization." *Id.* § 3B1.1, comment. (n.2); *see also id.* comment. (n.4) (identifying relevant factors to consider in evaluating the role of a defendant in criminal activity). In addition, the enhancement is justified if the defendant managed or supervised the activities of at least one other person in a scheme that involved five or more participants. *See United States v. Capers*, 61 F.3d 1100, 1108-09 (4th Cir. 1995); *United States v. Brown*, 147 F.3d 477, 485-86 (6th Cir. 1998); *United States v. Payne*, 63 F.3d 1200, 1212 (2d Cir. 1995).[5]

The record supports the district court's finding that Bartley was a manager or supervisor in each of the conspiracies. The government presented evidence that Bartley controlled the activities of other participants in the drug distribution conspiracy by directing one of his street dealers to identify addresses in Parkersburg, West Virginia, where the packages of marijuana could be sent, and by sending his girlfriend to West Virginia on at least one occasion to transport the drugs. The record also indicates that from the time Bartley became involved in the conspiracy, he "exercised management responsibility" by setting prices and terms of payment, handling proceeds, arranging the logistics of the deliveries, and giving advice to his street dealers on how to market the product. With regard to the money laundering conspiracy, Bartley repeatedly directed others to wire transfer proceeds from the drug distribution activities or to receive such transfers of funds on his behalf.

This is not a case in which a defendant simply supplied drugs and negotiated their sale. Rather, the evidence clearly indicates that Bartley "arrang[ed] the logistics of [marijuana] deliveries or payments," and at the very least "coordinate[d]" the activities of others. *United*

---

[5]Bartley does not contest that the conspiracies involved five or more participants.

*States v. Vargas*, 16 F.3d 155, 160 (7th Cir. 1994). This alone is sufficient to warrant the enhancement. *See, e.g.*, *United States v. Harriott*, 976 F.2d 198, 202 (4th Cir. 1992).

Therefore, the district court did not clearly err in finding that Bartley's role in the offenses justified a three-level enhancement under U.S.S.G. § 3B1.1(b).

## IV.

For the above reasons, we reverse the district court's refusal to group the conspiracy counts, but we affirm the sentencing enhancements imposed for Bartley's role in each conspiracy. We vacate the sentence and remand the case to the district court for re-sentencing consistent with this opinion.

*AFFIRMED IN PART, REVERSED IN PART,*
*VACATED IN PART, AND REMANDED*

WILKINSON, Chief Judge, dissenting:

I respectfully dissent from the grouping of the conspiracy offenses of which Bartley was convicted. There is a square conflict among the circuits regarding whether to group money laundering and narcotics distribution offenses under U.S.S.G. § 3D1.2(b). *Compare United States v. Harper*, 972 F.2d 321, 322 (11th Cir. 1992) (refusing to group under subsection (b)); *United States v. Gallo*, 927 F.2d 815, 824 (5th Cir. 1991) (same); *with United States v. Lopez*, 104 F.3d 1149 (9th Cir. 1997) (grouping under subsection (b)). Likewise, there is a disagreement among the circuits as to which offenses are sufficiently related to merit grouping under U.S.S.G. § 3D1.2(c). *Compare United States v. Lombardi*, 5 F.3d 568 (1st Cir. 1993) (refusing to group money laundering and mail fraud offenses under subsection (c)); *with United States v. Rice*, 185 F.3d 326, 329 (5th Cir. 1999) (grouping money laundering and narcotics offenses under subsection (c)).

I believe that money laundering and drug trafficking are sufficiently different crimes that merit no grouping at all. Because group-

ing in this situation underestimates the range of harms that narcotics enterprises inflict upon society, I would affirm the district court's judgment that the defendant be punished for all of the offenses of which he was convicted.

I.

Bartley contends that his money laundering and drug offenses should be grouped under U.S.S.G. § 3D1.2(b). I disagree.

Subsection (b) mandates grouping "[w]hen counts involve the same victim and two or more acts or transactions [are] connected by a common criminal objective or constitut[e] part of a common scheme or plan." U.S.S.G. § 3D1.2(b). In cases such as this, where society at large is the victim, the "victim" for purposes of subsection (b) "is the societal interest that is harmed." *Id.* § 3D1.2, comment. (n.2). The guidelines explain that in such cases, the counts are grouped together only when "the societal interests that are harmed are closely related." *Id.*

The basic problem with grouping under subsection (b) is that the narcotics statutes and the money laundering statute protect separate societal interests. *See United States v. Harper*, 972 F.2d 321, 322 (11th Cir. 1992) (holding that narcotics distribution increases violence and threatens public health while money laundering threatens the integrity of lawfully operating financial institutions); *United States v. Gallo*, 927 F.2d 815, 824 (5th Cir. 1991) (same). Quite simply, one may launder money without participating in a narcotics conspiracy, and one may participate in a narcotics conspiracy without laundering money. Each crime is different, and each inflicts distinct harms upon society.

Congress recognized as much when it passed the money laundering statute. *See* Money Laundering Control Act of 1986 § 1352, 18 U.S.C. §§ 1956-57 (1994). The Senate report makes clear that the bill was intended to create a "new Federal offense against money laundering." S. Rep. No. 99-433, at 4 (1986). For this reason, Congress designed the money laundering statute to target conduct other than that which generated the "dirty" money. The Act provides a punishment for conduct undertaken subsequent to the underlying crime

rather than merely affording an alternative means of punishing the underlying crime itself. *See United States v. Holmes*, 44 F.3d 1150, 1154 (2d Cir. 1995); *United States v. Pierro*, 32 F.3d 611, 620 (1st Cir. 1994); *United States v. Edgmon*, 952 F.2d 1206, 1213-14 (10th Cir. 1991).

The societal interests protected by the money laundering statute thus differ from the societal interests protected by the drug laws. *See United States v. Heaps*, 39 F.3d 479, 486 (4th Cir. 1994) (in creating the money laundering statute, "Congress intended to prevent an ill other than those already prohibited by other laws"). The differences are at least threefold. First, in contrast to the narcotics laws, the money laundering statute is concerned with collecting tax revenue on income from illicit sources. Section 1956 applies to individuals who launder money "with intent to engage in conduct constituting a violation of section 7201 or 7206 of the Internal Revenue Code of 1986." 18 U.S.C. § 1956(a)(1)(A)(ii). The Senate report on the bill noted that although it was already possible under the Internal Revenue Code to prosecute individuals for facilitating tax evasion, Congress determined that there existed a need for "a special penalty for those whose job it is to launder unreported income." S. Rep. No. 99-433, at 11.

Second, the money laundering statute aims to protect the integrity of financial institutions. There is a wholly separate societal interest in protecting the integrity of such institutions given their key role in the country's economy. "While both [narcotics distribution and money laundering] taint our polity, the former taints our people; it injures their bodies and their minds. The latter taints our institutions; it uses otherwise legitimate means to transfer or hide illegitimate gains." *United States v. Lopez*, 104 F.3d 1149, 1152 (9th Cir. 1997) (Fernandez, J., dissenting). Congress recognized that money laundering placed financial institutions at risk. *See* S. Rep. No. 99-433, at 2 ("[O]rganized crime today uses banks and other financial institutions as routinely, if not as frequently, as legitimate businesses."). Bank employees could be enticed to aid criminals in their schemes to launder money. Public confidence in financial institutions could be undermined if it were revealed that they served underworld clients. In order to protect financial institutions, the money laundering statute creates a good faith defense for financial institutions that inform law enforcement officials about customers they suspect of money laundering. *See*

Money Laundering Control Act of 1986 § 1353, 12 U.S.C. § 3403(c) (1994). The Act also requires the Attorney General to report to bank regulators the money laundering convictions of any financial institution's officer or employee. *See* 18 U.S.C. § 1956(g).

Finally, and most importantly, the money laundering statute is designed to prevent a variety of criminals, not just drug dealers, from enjoying the profits of their illicit activities. Section 1956's prohibitions do not extend solely to the proceeds of narcotics distribution. Rather, section 1956 applies to profits from, among other things, illegal gambling, prostitution, murder-for-hire, loansharking, embezzlement, bribery, and extortion. *See* 18 U.S.C. § 1956(c)(7) (1994 & Supp. III 1997).

This wide net of section 1956 illuminates the shortcomings of the Ninth Circuit's analysis in *United States v. Lopez*, 104 F.3d 1149 (9th Cir. 1997) (per curiam), upon which Bartley relies. In that case, the Ninth Circuit determined that the societal interests protected by the money laundering statute and the drug trafficking statutes are closely related because money laundering allows drug dealers "to obtain the benefits of income gained from illicit activities." *Lopez*, 104 F.3d at 1150-51. Under the Ninth Circuit's view, the societal interest protected by the money laundering statute is that of eliminating the drug trade.

Treating narcotics distribution and money laundering as "closely related," however, misstates the societal interest protected by section 1956 — namely, to protect society from the disbursement of capital earned by criminals. This is why section 1956 applies to so many crimes besides narcotics distribution. The Ninth Circuit's analysis would have us group the money laundering and gambling charges for a bookie who launders his proceeds, since money laundering allows bookies "to obtain the benefits of income gained from illicit activities." Likewise, the Ninth Circuit's analysis would have us group the money laundering and murder offenses for a hitman, since money laundering allows assassins "to obtain the benefits of income gained from illicit activities."

This simply cannot be. The facts of this case illustrate the separate societal interests invaded. First, several of Bartley's coconspirators

engaged in only the drug distribution conspiracy, while others engaged only in the money laundering enterprise. Second, Bartley's girlfriend transported drug money to New York, suggesting that Bartley could conduct his narcotics operation independently of his money laundering activities. Finally, the integrity of the Western Union's wire transfer business was tested by Bartley's money laundering. Bartley exploited Western Union's reputation and good will in order to deceive the authorities about his role in the narcotics enterprise.

Because the societal interests protected by the money laundering and narcotics statutes are distinct, the district court properly refused to group Bartley's offenses under subsection (b).

## II.

The majority contends that Bartley's money laundering and drug offenses should be grouped under U.S.S.G. § 3D1.2(c). It argues that Bartley's drug offenses were doubly counted — once as the basis of his drug conviction under 21 U.S.C. § 846, and once as a specific offense characteristic of his money laundering count.

I again disagree. Subsection (c) mandates grouping "[w]hen one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts." U.S.S.G. § 3D1.2(c). As the guidelines state, the purpose of subsection (c) is to prevent "'double counting' of offense behavior." U.S.S.G. § 3D1.2, comment. (n.5). However, the guidelines also make clear that subsection (c) "applies only if the offenses are closely related." *Id.*

I am persuaded neither by the majority's analysis nor by *United States v. Rice*, 185 F.3d 326 (5th Cir. 1999), upon which the majority relies. Both analyses disregard the text of § 3D1.2(c) in determining that a defendant's knowledge of the drug proceeds' origin counts as "conduct" for purposes of subsection (c). Furthermore, both analyses fail to adequately consider whether money laundering and narcotics distribution are "closely related" as required by the guidelines. *See* U.S.S.G. § 3D1.2, comment. (n.5).

The majority disregards the plain text of subsection (c), in its attempt to call Bartley's knowledge conduct for purposes of § 3D1.2(c). Subsection (c) mandates grouping "when one of the counts embodies *conduct* that is treated as a specific offense characteristic" in another of the counts. U.S.S.G. § 3D1.2(c) (emphasis added). The majority argues that the term "conduct" should be interpreted broadly to include everything alleged in Bartley's drug conspiracy charge. Specifically, the majority argues that since the drug conspiracy charge alleged Bartley laundered money in order to finance his ongoing drug activities, Bartley's "knowledge" that the laundered funds were the proceeds of narcotics activity should somehow count as "conduct" for purposes of § 3D1.2(c). *See* ante at 7-8.

In the course of avoiding the clear text of the guidelines, my good colleagues emphasize the language used in Bartley's indictment rather than the legal elements of his two offenses. *See ante* at 8. The majority offers no support from the guidelines or the caselaw for its view that the factual averments of the indictment are dispositive. The guidelines suggest that, if anything, the elements of particular offenses are the critical factor in the § 3D1.2(c) grouping determination. Indeed, the guidelines use the words "counts" and "offenses" interchangeably. *See e.g.*, U.S.S.G. § 3D, Introductory Commentary, ("[C]ounts that are grouped together are treated as constituting a single offense for purposes of the guidelines."). By contrast, the majority's approach would force sentencing courts to pour over the specific averments in every indictment in order to determine whether grouping is appropriate. This reading makes the grouping inquiry even more complex than it already is. Moreover, the majority's indictment-specific inquiry affords prosecutors the opportunity to manipulate a defendant's sentence simply by artfully drafting indictments. That state of affairs directly contradicts the guidelines' stated purpose to "limit the significance of the formal charging decision." *See e.g.*, U.S.S.G. § 3D, Introductory Commentary. Above all, the majority's analysis has diverted the grouping inquiry away from the plain text of the guidelines. Simply put, § 3D1.2(c) hinges on Bartley's *conduct*, while the specific enhancement for money laundering under § 2S1.1(b)(1) hinges on Bartley's *knowledge*.[1]

---

[1]Contrary to the majority's assertion, this interpretation of subsection (c) does not seek to promote a "one-size-fits-all" grouping scheme. Rather, it simply follows the grouping analysis that the guidelines require.

The majority's mistake is thus fundamental. It fails to apply the guidelines as written. By its very terms, subsection (c) is not applicable to Bartley. To repeat, subsection (c) mandates grouping "when one of the counts embodies *conduct* that is treated as a specific offense characteristic" in another of the counts. U.S.S.G. § 3D1.2(c) (emphasis added). The "conduct" embodied in Bartley's narcotics count is his distribution of drugs, coupled with the conspiracy to distribute. *See* 21 U.S.C. §§ 841(a)(1), 846 (1994). The specific offense characteristic in Bartley's money laundering crime is his *knowledge* that the money being laundered came from the proceeds of narcotics transactions. *See* U.S.S.G. § 2S1.1(b)(1). While the majority attempts to characterize Bartley's knowledge as "conduct" embodied in the drug count, this not only ignores the clear text of § 3D1.2(c), but also conflates the two theoretical pillars of criminal law — actus reus and mens rea. *See United States v. Lombardi*, 5 F.3d 568, 571 (1st Cir. 1993) ("It happens that [the defendant's] knowledge of the funds' source derives from the fact that he committed [mail fraud], but that does not make the fraudulent acts the same thing as knowledge of them.").[2]

Despite the fact that the First Circuit's opinion in *Lombardi* involved the interplay of money laundering and mail fraud, rather than money laundering and narcotics distribution, that case offers valuable insights on the subsection (c) analysis. The *Lombardi* court determined that to group the defendant's money laundering and mail fraud offenses would create a disturbing anomaly in the guideline's application. "One who commits a fraud *and* launders the money (thereby knowing of its source) is normally more culpable than one who merely launders the money knowing of its source. Yet if Lombardi's interpretation were adopted, a defendant would get exactly the same total offense level whether the defendant committed the mail fraud or merely knew that someone else had committed it." *Lombardi*, 5 F.3d at 571.

The majority's analysis ignores the anomaly the First Circuit identified in *Lombardi*. If Bartley's offenses are grouped, Bartley would

---

[2]The majority's argument over the term "offense characteristic" again fails to address the point that it has attempted to treat knowledge as conduct in violation of the textual mandate of the guidelines.

receive the same total offense level for his drug conspiracy as would a run-of-the-mill drug dealer who did not launder money. Both would receive a total offense level of 31. Under the majority's analysis, Bartley and the drug dealer are equally culpable and deserve the same sentence despite the facts that the drug dealer had nothing to do with the money laundering activities, and Bartley coordinated both the drug distribution and the money laundering. Indeed, if the majority is correct that the money laundering count should be grouped with the narcotics count, there would be no accounting in Bartley's sentence for the fact that he laundered money. In effect his conviction on that count would be washed away. *See United States v. Vitale*, 159 F.3d 810, 814 (3d Cir. 1998).

I am also not persuaded by the majority's explanation of why Bartley's narcotics and money laundering offenses are "closely related." *See* U.S.S.G. § 3D1.2, comment. (n.5) (grouping under subsection (c) is only permissible "if the offenses are closely related."). The guidelines provide examples of just which offenses count as "closely related." For instance, the guidelines note that the "use of a firearm in a bank robbery and unlawful possession of that firearm are sufficiently related to warrant grouping." *Id.* By contrast, "if the defendant were convicted of one count of securities fraud and one count of bribing a public official to facilitate that fraud, the two counts would not be grouped together." *Id.*

It appears to me that charges for the use of a firearm in a bank robbery and for possession of that same firearm are more closely related than charges for money laundering and drug distribution. As noted above, Congress intended the money laundering statute to constitute a "new Federal offense," S. Rep. No. 99-433, at 4 (1986), and it designed the statute to target conduct other than that which generated the "dirty" money. *See*, *e.g.*, *United States v. Holmes*, 44 F.3d 1150, 1154 (2d Cir. 1995). The money laundering statute applies to proceeds from many different types of illegal activities, not just narcotics offenses. This is the difference between the crimes the guidelines suggest are closely related, and the crimes of which Bartley was convicted. It is nearly impossible to become eligible for prosecution for the use of a firearm in a bank robbery without also becoming eligible for prosecution for possession of a firearm. As a result, grouping these two offenses is appropriate under subsection (c). By contrast, it

is possible to participate in a narcotics conspiracy without laundering money, just as it is possible to launder money without participating in a narcotics conspiracy. Therefore, Bartley's two offenses are not "closely related" in the way the guidelines envisioned.

The majority argues, however, that Bartley's offenses are closely related since Bartley laundered money in order to facilitate additional narcotics purchases. *See* ante at 10. Neither the guidelines nor the money laundering statute, however, provide any basis for this distinction. The guidelines considered a similar example where a second crime was committed in order to facilitate the first. The guidelines determined that grouping was not appropriate in that case. *See* U.S.S.G. § 3D1.2, comment. (n.5). Likewise, the plain text of the money laundering statute applies equally to money laundering committed with an intent to facilitate ongoing criminal activity and money laundering that does not facilitate such activity. *See* 18 U.S.C. § 1956(a)(1).

The majority decries the two point increase in Bartley's total offense level that results from § 3D1.2's unwillingness to group his offenses.[3] It should be noted, however, that the same guideline grouping rules manage to combine a level 31 offense (for narcotics distribution) with a level 29 offense (for money laundering) to produce a combined offense of only 33 (instead of 60) before the final adjustment.[4]

---

[3]U.S.S.G. § 3D1.2(d) lists individual offenses, including money laundering and narcotics distribution, that are eligible for grouping. However, offenses may only be grouped under subsection (d) if they are "closely related." *United States v. Walker*, 112 F.3d 163, 167 (4th Cir. 1997) (citing *United States v. Porter*, 909 F.2d 789, 792-93 (4th Cir. 1990)); *see also United States v. Napoli*, 179 F.3d 1, 9 n.4 (2d Cir. 1999) ("[T]he mere appearance of fraud and money laundering on subsection (d)'s list of counts 'to be grouped' is insufficient to establish that they should be placed in a single group."). For the reasons stated above, I believe money laundering and narcotics distribution are not closely related. *See also United States v. Harper*, 972 F.2d 321, 322 (11th Cir. 1992) (refusing to group these offenses under subsection (d)); *United States v. Lopez*, 104 F.3d 1149, 1153-54 (9th Cir. 1997) (Fernandez, J., dissenting) (same).

[4]If the counts are grouped, Bartley's total offense level would be 31 rather than 33, before the final adjustment for acceptance of responsibility.

This is a show of "charity far more significant than the two point increase that is at issue here." *United States v. Lombardi*, 5 F.3d 568, 571 (1st Cir. 1993).

## III.

That Bartley's money laundering offense is loosely related to his narcotics activities is no reason to group his two crimes for sentencing purposes. Congress intended for drug trafficking and money laundering to constitute separate crimes, and the Sentencing Commission intended not to group them. Bartley committed two separate offenses and inflicted two distinct harms upon society. The majority's approach consolidates these harms. In doing so, it has underestimated the full extent of personal devastation and institutional corruption that narcotics enterprises cause.

I would affirm the judgment.